**[J-55-2016]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 712 CAP |
| | : | |
| Appellee | : | Appeal from the Order of the Court of |
| | : | Common Pleas, Monroe County, |
| | : | Criminal Division entered on August 14, |
| v. | : | 2015 at No. CP-45-CR-0001522-2001. |
| | : | |
| | : | SUBMITTED:  March 24, 2016 |
| MANUEL SEPULVEDA, | : | |
| | : | |
| Appellant | : | |


**OPINION**


**JUSTICE DONOHUE**                    **DECIDED:  August 15, 2016**

This capital appeal, filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546 ("PCRA"), returns following our remand of the case to the Monroe County Court of Common Pleas ("PCRA court").[1]  At issue in this appeal is whether, following remand from an appellate court with specific instructions, a PCRA court may treat new claims raised by the petitioner, which are outside the scope of the remand order, as amending the petitioner's first, timely PCRA petition.  We conclude that because the PCRA petition has been fully adjudicated, and because the PCRA court is required to proceed in conformance with the remand order, the PCRA court is without authority to permit amendment.

---

[1]  We have jurisdiction over this case pursuant to 42 Pa.C.S.A. § 9546(d).

To properly frame our discussion, a summary of the relevant facts and procedural history is necessary.[2] On November 22, 2002, a jury convicted Manuel Sepulveda ("Sepulveda") of two counts of first-degree murder and related charges for the deaths of John Mendez ("Mendez") and Ricardo Lopez ("Lopez").[3] The jury sentenced Sepulveda to death for each of the murders.[4]

---

[2] The background of the case is set forth in greater detail in the two opinions previously issued by this Court in this matter. *See* Commonwealth v. Sepulveda, 855 A.2d 783, 786-89 (Pa. 2004) (plurality) ("Sepulveda I"), *cert. denied*, 546 U.S. 1169 (2006); Commonwealth v. Sepulveda, 55 A.3d 1108, 1115-16 (Pa. 2012) ("Sepulveda II").

[3] The evidence presented at trial of how the murders occurred was as follows:

> As the four men were sitting around the kitchen table, another argument erupted, at which point [Sepulveda] grabbed a .12 gauge shotgun and shot Mendez in the stomach. He then shot Lopez in the side. Lopez collapsed on the floor. [Sepulveda] then placed the gun on Lopez's back and fired, killing him. Mendez escaped from the kitchen and ran upstairs. [Sepulveda] then chased him upstairs where he shot him a second time. Mendez was able to exit the house and flee to a neighbor's house. [Sepulveda] and Heleva followed him, entered the neighbor's property, seized Mendez, and dragged him back to Heleva's house. ... After the men dragged Mendez back to the house, [Sepulveda] struck him with a hatchet type of weapon, killing him. There was no evidence that either victim had, or displayed, a firearm when [Sepulveda] murdered them.

> \* \* \*

> Police found the dead bodies of Lopez and Mendez in the basement. The police found Lopez beneath slabs of insulation and dry wall material, with his pants pulled to his ankles. They found Mendez beneath a pile of laundry, stripped naked with his thumb in his mouth and with a rubber bungee cord wrapped tightly around his neck.

Sepulveda II, 55 A.3d at 1115; *see also* Sepulveda I, 855 A.2d at 787.

[4] For each count of murder, the jury found one aggravating circumstance (Sepulveda committed another murder prior to or at the time of the murder) and two mitigating (continued…)

Sepulveda's defense at trial was that the double homicide was justified based on his subjective, but unreasonable, belief that he was acting in the defense of others. Pursuant to this defense, Sepulveda claimed that he was only guilty of voluntary manslaughter. *See* Sepulveda II, 55 A.3d at 1121 & n.11; 18 Pa.C.S.A. §§ 506, 2503(b). At the time of the murders, Sepulveda resided in the home of Daniel Heleva ("Heleva") and Robyn Otto ("Otto") with, inter alia, their two minor children.[5] Sepulveda was responsible for watching the children while Heleva and Otto worked.

According to Sepulveda's testimony at trial, just prior to the murders, Otto told Sepulveda that "she was scared [Mendez] was going to do something to her and the kids." N.T., 11/21/2002, at 634. Sepulveda then joined Heleva, Mendez and Lopez in the kitchen. The men got into an argument and, per Sepulveda, Mendez began "throwing punches at Heleva" and Lopez "jumped in." Id. Sepulveda testified that he shot Lopez and Mendez to protect Heleva and the children. Id. at 635-36, 672. Although Otto testified, as a witness for the Commonwealth, at Sepulveda's trial, trial

---

(…continued)
circumstances (Sepulveda's age -- twenty-two -- at the time of the murders and that he did not have a significant history of criminal convictions). *See* 42 Pa.C.S.A. § 9711(d)(11), (e)(1), (4). The jury unanimously found that the aggravating circumstance outweighed the mitigating circumstances and returned two sentences of death. *See* 42 Pa.C.S.A. § 9711(c)(1)(vi).

[5] The house was a drug den, with drug use and sales occurring therein night and day. The record reflects that others also lived there and that numerous people (approximately twenty-five to thirty people per day) came and went from the house at all hours. Sepulveda began using drugs prior to moving in with Heleva and Otto, but his crack-cocaine addiction escalated while living in the house. At the time of the murders, Sepulveda was reportedly smoking the drug throughout the day and night, using between a quarter and a half a gram at a time.

counsel did not cross-examine her about her alleged fear of Mendez or the threats Sepulveda testified that Mendez made.  *See generally* N.T., 11/20/2002, at 598-615.

Following sentencing, Sepulveda filed a direct appeal to this Court.  On August 19, 2004, we affirmed his judgment of sentence.  The United States Supreme Court denied his request for certiorari on February 21, 2006.

Sepulveda thereafter filed a timely pro se PCRA petition.  Three attorneys from the Federal Community Defender Office ("FCDO") entered their appearances on Sepulveda's behalf and filed an amended PCRA petition on January 2, 2007, raising fourteen claims in 386 averments spanning nearly 150 pages.  Prior to the hearings held on this petition, one of Sepulveda's FCDO attorneys (Keisha Hudson, Esquire) drafted an affidavit detailing two in-person interviews she had with Otto.[6]  The affidavit detailed Sepulveda's drug use at the time of the murders, as well as her acknowledgment that prior to the murders, she told Sepulveda that Mendez had previously threatened to burn down the house with her and her children inside; Sepulveda knew that Otto feared Mendez; that, like Otto, Sepulveda was also "convinced … that something bad was going to happen and that the kids were going to get hurt"; and that he participated in the murders to protect Otto and her children.[7]

---

[6]  The affidavit is not dated, and Attorney Hudson did not indicate on the cover page when the in-person interviews with Otto occurred.  *See* PCRA Exhibit D-11.  We therefore only know that the FCDO obtained this information and drafted the unsigned affidavit sometime prior to Otto testifying at the June 11, 2007 PCRA hearing.

[7]  This is in stark contrast to the testimony Otto provided at Sepulveda's trial, at which time she stated that Mendez was her friend -- he referred to her as "ma," and her kids referred to him as "Uncle Johnny" -- and that she tried to help him and protect and save him from Heleva and Sepulveda on the night Mendez was murdered.  N.T., 11/20/2002, at 575, 591-92.  She also stated at that time that she feared Heleva and Sepulveda, not Mendez.  Id. at 596.

PCRA Exhibit D-11, 6/11/2007, ¶¶ 9, 11, 13. In the same unsigned affidavit, Otto also indicated that she had made a deal with the District Attorney to testify against Sepulveda and Heleva and in exchange, she could plead guilty only to child endangerment and she was assured that her children would be placed in the care of family members; otherwise, the District Attorney told her she would be prosecuted to the full extent of the law, her children would be placed in foster care and her parental rights would be terminated in fifteen months.[8] Id., ¶ 16. Otto did not sign the affidavit, but made several alterations to its content, initialing each change that she made.

Despite having this information prior to the 2007 PCRA hearings, the FCDO did not raise any PCRA claims pertaining to Otto's belief that Sepulveda committed the killings to protect her children or the Commonwealth's pretrial knowledge of her belief. Further, at the 2007 PCRA hearings, the FCDO limited its questioning of Otto to her knowledge of Sepulveda's drug use and his behavior when he was high. N.T., 6/11/2007, at 14-17. Although the FCDO confronted Otto with her unsigned affidavit, counsel asked no questions about the substance of it. Counsel only asked Otto why she did not sign the affidavit, and she explained that she was afraid; she had lost custody of her children as a result of this ordeal and she wanted to reunify with them. N.T., 6/11/2007, at 22. She stated that she nonetheless "wanted to help" Sepulveda. Id.

The 2007 PCRA hearings proceeded over four days, during which the court heard from fifteen witnesses, three of whom testified as experts, and all of whom were

---

[8] Otto's children were in foster care, in the custody of Monroe County Children and Youth, until August 15, 2002, at which time Heleva's parents became the children's legal custodians. N.T., 4/20/2015, at 48.

called to testify on Sepulveda's behalf. Following the hearing, the PCRA court granted the FCDO permission to file another amended PCRA petition, which, once again, did not include the claims at issue in this appeal. Thereafter, in a seventy-page written opinion, the PCRA court addressed each of the arguments raised, and ultimately denied Sepulveda's request for relief.

Sepulveda, with the continued assistance of his FCDO counsel, appealed the decision to this Court, raising fourteen issues and sub-issues. In a fifty-three-page opinion, we detailed the facts of record and addressed each of the arguments raised. *See* Sepulveda II, 55 A.3d at 1118-51. We agreed with the PCRA court's denial of relief on all but one issue -- whether trial counsel was ineffective[9] for failing to investigate and present at Sepulveda's penalty hearing evidence of his mental health diagnoses and traumatic childhood.[10] We found that the claim had arguable merit, as Sepulveda's trial counsel did not conduct a reasonable investigation into his background to discern the existence of possible mitigating evidence, and that counsel lacked a reasonable basis

---

[9] For a court to find that counsel provided ineffective assistance, a PCRA petitioner must plead and prove, by a preponderance of the evidence, that (1) the claim has arguable merit; (2) counsel had no reasonable basis designed to advance the petitioner's interest for his/her act or omission; and (3) the petitioner suffered prejudice as a result, which, for PCRA purposes, means but for counsel's act or omission, there is a reasonable probability that the result of the proceeding would have been different. Commonwealth v. Treiber, 121 A.3d 435, 445 (Pa. 2015) (citations omitted).

[10] The record reflects that as a child, Sepulveda regularly observed violence, both in his home and in the neighborhoods in which he lived, and was also the victim of physical abuse at his father's hands. N.T., 6/11/2007, at 41-42, 45-46; N.T., 6/13/2007, at 13. Mental health professionals who assessed Sepulveda prior to the 2007 PCRA hearings diagnosed him with chronic posttraumatic stress disorder, cognitive disorder not otherwise specified, polysubstance abuse, and cocaine induced psychosis, and further concluded that he suffered from "mild neuropsychological deficits." N.T., 6/11/2007, at 38-39; N.T., 6/12/2007, at 60; N.T., 6/13/2007, at 12.

for his deficient performance. Id. at 1130. Because the question of whether trial counsel's performance prejudiced Sepulveda was not "self-evident," and "require[d] careful analysis of prejudice in the specific factual context of the case," we remanded the prejudice determination to the PCRA court, which could be "assisted by relevant advocacy from both sides." Id. at 1131.

This Court, sua sponte, also instructed the PCRA court on remand to address an "administrative matter":

> If federal funds were used to litigate the PCRA below—and the number of FCDO lawyers and witnesses involved, and the extent of the pleadings, suggest the undertaking was managed with federal funds—the participation of the FCDO in the case may well be unauthorized by federal court order or federal law. Accordingly, on remand, the PCRA court is directed to determine whether to formally appoint appropriate post-conviction counsel and to consider whether the FCDO may or should lawfully represent appellant in this state capital PCRA proceeding. *See* 18 U.S.C. § 3599(a)(2) (authorizing appointment of counsel to indigent state defendants actively pursuing federal habeas corpus relief from death sentence).

Id. (italicization omitted).

On February 21, 2013, the FCDO removed the proceedings related to the propriety of its representation of Sepulveda to the federal district court pursuant to 28 U.S.C. § 1442(a). On August 16, 2013, the federal district court granted the Commonwealth's motion to remand the proceeding for decision on the issue by the state court. The FCDO appealed that ruling, and the question of the propriety of the FCDO's representation of Sepulveda was consolidated for decision before the United States Court of Appeals for the Third Circuit with various other Pennsylvania cases raising the same concern, as the district courts in these cases "split on the jurisdictional question." In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def.

Ass'n of Phila., 790 F.3d 457, 461 (3d Cir. 2015) ("In re FCDO"), *as amended* (June 16, 2015), *cert. denied sub nom.* Pennsylvania v. Def. Ass'n of Phila., 136 S. Ct. 980 (2016), and *cert. denied sub nom.* Pennsylvania v. Fed. Cmty. Def. Org. of Philadelphia, 136 S.Ct. 994 (2016).[11]

---

[11] On June 12, 2015, the United States Court of Appeals, Third Circuit, issued its decision. It held that the FCDO's removal of this question to federal court was proper. In re FCDO, 790 F.3d at 474-75. On the merits of the question of whether the Commonwealth could seek the FCDO's disqualification from representing criminal defendants in state PCRA matters, the court granted the FCDO's motion to dismiss. *See* F.R.C.P. 12(b)(6) ("failure to state a claim upon which relief can be granted"). The court found that, to the extent the Commonwealth brought the disqualification actions under federal law (18 U.S.C. §§ 3006A, 3599), the Commonwealth lacked a private right of action. In re FCDO, 790 F.3d at 475. In the alternative, if the Commonwealth brought the disqualification proceedings pursuant to Article V, Section 10(c) of the Pennsylvania Constitution (relating to the Pennsylvania Supreme Court's power to proscribe and enforce rules of procedure and the conduct of the Pennsylvania courts), the court concluded that they conflict with federal law and are thus preempted:

> … Congress has authorized grants to Community Defender Organizations [of which the FCDO is one] and tasked the [Administrative Office of the United States Courts ("AO")] with supervising grant payments. The disqualification proceedings, however, seek to supplant the AO by allowing the Commonwealth's courts to determine whether a Community Defender Organization has complied with the terms of its federal grants and to attach consequences to noncompliance.
>
> Significantly, the disqualification proceedings are preempted whether or not federal law authorizes the [FCDO] to use grant funds for certain purposes in PCRA cases. If the [FCDO] is authorized to use grant funds, the Commonwealth plainly cannot disqualify it for doing so without undermining congressional objectives. But even if the [FCDO] is not authorized to use grant funds, the disqualification proceedings interfere with the regulatory scheme that Congress has created.

Id. at 476-77 (internal citation omitted).

The PCRA court held its own proceedings in abeyance while awaiting the decision on this issue. During this interim, Sepulveda filed a pro se PCRA petition on October 3, 2014, sounding in "newly discovered evidence," and appended thereto an amended affidavit signed by Otto. The substance of the affidavit was, in large part, the same as Otto's unsigned affidavit presented at the June 11, 2007 PCRA hearing, with only minor deletions regarding details of Sepulveda's and Otto's drug use and some additional details about their shared fear of Mendez and the Commonwealth's pretrial knowledge of that fear. In the penultimate paragraph of the affidavit, Otto explained that she did not sign the affidavit in 2007 or testify to the entirety of its contents because she was then attempting to regain custody of her children and she was concerned there would be "repercussions" if she testified to this information. Pro Se PCRA Petition, 10/3/2014, Exhibit A, ¶ 18. Otto stated that she was no longer so restrained, as her youngest child had since turned eighteen. Id. Otto concluded this paragraph by stating: "I also want to be absolutely clear about why this happened. [Sepulveda] did what he did because I told him I was afraid that [Mendez] would follow through on his threats and hurt my children." Id.

The PCRA court entered an order requiring the clerk of courts to forward Sepulveda's pro se filing to his counsel pursuant to Rule 576(A)(4) of the Pennsylvania Rules of Criminal Procedure. See Pa.R.Crim.P. 576(A)(4); Commonwealth v. Jette, 23 A.3d 1032, 1044 (Pa. 2011) (holding that if a criminal defendant is represented by counsel, "the proper response to any pro se pleading is [for the court] to refer the pleading to counsel, and to take no further action on the pro se pleading unless counsel forwards a motion"). On December 8, 2014, Sepulveda filed a pro se motion seeking

the removal of counsel and a Grazier[12] hearing. On December 22, 2014, the FCDO filed a motion to withdraw Sepulveda's request for a Grazier hearing and concomitantly filed in the PCRA court Otto's amended affidavit that Sepulveda had appended to his October 3, 2014 pro se petition. The PCRA court held a hearing on the Grazier request on February 18, 2015.[13] At that time, Sepulveda confirmed his desire to have the FCDO continue representing him and withdrew his request to proceed pro se. N.T., 2/18/2015, at 21-22. Regarding the new claims implicated by Otto's amended affidavit the PCRA court stated it would address it along with the question of prejudice remanded from this Court "in one fell swoop," and scheduled a hearing in the matter for April 20, 2015. Id. at 15, 31-33; PCRA Court Order, 2/20/2015, ¶ 4.

At the April 20 hearing, the PCRA court heard argument on the question remanded by this Court regarding whether Sepulveda was prejudiced by his trial counsel's failure to investigate or present mental health mitigation evidence at his penalty hearing. Id. at 6-24. No further evidence was presented by either party on this issue, with the parties agreeing instead to brief their respective positions.

---

[12] Commonwealth v. Grazier, 713 A.2d 81 (Pa. 1998) ("When a waiver of the right to counsel is sought at the post-conviction and appellate stages, an on-the-record determination should be made that the waiver is a knowing, intelligent, and voluntary one.").

[13] Also at the February 18, 2015 proceeding, the Commonwealth stipulated that the FCDO could represent Sepulveda. Despite the fact that decision on this question was a mandate by this Court sua sponte, and not an issue raised by the Commonwealth, the PCRA court found that the Commonwealth's stipulation somehow mooted the question and permitted it to move its PCRA proceedings forward with the FCDO continuing to represent Sepulveda. Nonetheless, our consideration of the propriety of the PCRA court's conclusion is unnecessary given the Third Circuit's resolution of the matter. See supra, note 11.

Thereafter, regarding the new claims, Otto testified in conformance with her amended affidavit. Id. at 32, 34-35, 37-38. Otto further testified that she told the District Attorney that she had been afraid of Mendez and feared for her children's safety, but that neither the Commonwealth nor defense counsel asked her questions about this at trial. Id. at 36-37.

Following the PCRA hearing, Sepulveda filed a counseled motion seeking leave to amend his first, timely PCRA petition "to conform his claims to the evidence presented." Motion for Leave to Amend PCRA Petition, 4/20/2015, ¶ 10 (citing Pa.R.Crim.P. 905(A)). Appended thereto was a PCRA petition raising claims of after discovered evidence,[14] a Brady[15] violation, and ineffective assistance of trial counsel. His after discovered evidence claim consisted, in relevant part, of the statements contained in Otto's amended affidavit regarding Sepulveda's knowledge that Otto feared Mendez would harm her children "would have bolstered the credibility of his statement that he sincerely believed he needed to use deadly force against the victims to prevent them from hurting others." Amended PCRA Petition, 4/20/2015, ¶ 25. Sepulveda

---

[14] The "after discovered evidence" provision of section 9543 grants relief to a PCRA petitioner who successfully proves "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi); see PCRA Opinion, 8/14/2015, at 18-22. For a claim of after discovered evidence, the petitioner must prove that "(1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict." Commonwealth v. Washington, 927 A.2d 586, 595-96 (Pa. 2007).

[15] Brady v. Maryland, 373 U.S. 83 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

contended that this information was "newly discovered" because Otto stated she would not have previously provided this testimony based upon her concerns that it would negatively impact her ability to regain custody of her children. Id., ¶ 29. His Brady claim centered upon the Commonwealth's failure to disclose to trial counsel Otto's statement to the District Attorney that she feared Mendez and that Sepulveda was aware of her fear when he committed the killings. Id., ¶¶ 35-41. To the extent his trial counsel was aware of this information, or failed to exercise reasonable diligence to discover it, Sepulveda also claimed that this constituted ineffective assistance of counsel in failing to discover the evidence or present it at trial. Id., ¶¶ 44-52.

The Commonwealth responded, arguing that the PCRA court should not treat the new filing as an amended PCRA petition, but as a second, untimely PCRA petition that failed to satisfy any of the exceptions to the PCRA's timeliness requirements. *See* 42 Pa.C.S.A. § 9545(b)(1) (subject to certain, delineated exceptions, the PCRA requires that a petition, "including a second or subsequent petition, be filed within one year of the date the judgment becomes final"). Sepulveda filed a counseled reply, asserting that his new claims should be considered as amendments to his first, timely PCRA petition. In the alternative, he argued that he satisfied the newly discovered fact exception to the timeliness requirement (42 Pa.C.S.A. § 9545(b)(1)(ii)), as "[n]o amount of effort by Mr. Sepulveda or his counsel could have made Ms. Otto's children turn 18 any earlier." Petitioner's Consolidated Reply Brief in Support of Post-Conviction Relief, 6/3/2015, at 6. He further claimed that he satisfied the government interference exception to the one-year time bar (42 Pa.C.S.A. § 9545(b)(1)(i)) because "[t]he Commonwealth's failure to disclose Ms. Otto's prior statements about her and Mr. Sepulveda's fear of Mr.

Mendez prevented Mr. Sepulveda from raising the claim as well." Id. Otto signed her affidavit on August 12, 2014, which counsel for Sepulveda argued was the first time the new claims could have been presented, and Sepulveda raised these claims within sixty days thereof in his pro se PCRA petition on October 3, 2014, thus providing the PCRA court jurisdiction to determine the merits of the issues raised. Id. at 6-7; see 42 Pa.C.S.A. § 9545(b)(2) (stating that any petition raising an exception to the PCRA's time bar must be filed within sixty days of the date the petitioner could have first presented the claim.).

On August 14, 2015, the PCRA court entered an order and opinion granting Sepulveda's request to amend his first, timely PCRA petition, but denying relief on the merits of the claims raised. In the same order, the PCRA court granted Sepulveda a new penalty hearing based on its conclusion that trial counsel's failure to investigate and present mental health mitigation evidence prejudiced Sepulveda.[16] The Commonwealth has not challenged the latter determination.

Sepulveda appealed from the PCRA court's dismissal of his newly raised claims. On appeal before this Court, he asserts that he is entitled to a new guilt-phase trial because "(1) [Sepulveda] presented newly discovered exculpatory evidence that 'would have changed the outcome of the trial if it had been introduced,' requiring a new trial under both the PCRA and the Due Process Clause, and (2) the Commonwealth

---

[16] To prove prejudice based upon counsel's failure to present mitigation evidence in a capital penalty-phase trial where the jury found at least one mitigating circumstance, as in the case at bar, "the question is whether there is a reasonable probability that, had the PCRA evidence been adduced at the penalty phase, [the petitioner] would have been able to prove at least one additional mitigating circumstance, and at least one juror would have concluded that the mitigating circumstances collectively outweighed the aggravating ones." Commonwealth v. Gibson, 19 A.3d 512, 526 (Pa. 2011).

suppressed material, exculpatory evidence, in violation of [Sepulveda]'s right to due process[.]" Sepulveda's Brief at 1. As it did below, the Commonwealth contends that this was not a proper amendment, and the PCRA court should not have treated the new claims as amending Sepulveda's first, timely PCRA petition. Commonwealth's Brief at 24-25. As agreement with this argument would obviate review of the merits of the new claims raised, we begin our analysis here.

In support of its decision to treat the new claims as an amended petition, the PCRA court stated that both the Rules of Criminal Procedure and case law from this Court state that a PCRA court may, in its discretion, permit a defendant to file an amended PCRA petition with previously unraised claims years after the initial, timely filing. PCRA Court Opinion, 8/14/2015, at 17 (citing Pa.R.Crim.P. 905(A);[17] Commonwealth v. Flanagan, 854 A.2d 489, 495-500 (Pa. 2004)). The PCRA court further found that these circumstances implicate "the efficient administration of justice," as "it would waste scarce judicial resources" to hold a second sentencing hearing "while a 'second' PCRA [petition] based on after discovered evidence would be filed at some future time." Id. at 18.

Sepulveda agrees, asserting that it was within the PCRA court's discretion to permit him to amend his first, timely PCRA petition. Sepulveda's Reply Brief at 4-5 (citing cases and Pa.R.Crim.P. 905(A)). As Rule 905(A) requires the PCRA court to permit the filing of an amended petition "freely … to achieve substantial justice," and

---

[17] Rule 905(A) of the Pennsylvania Rules of Criminal Procedure provides: "The judge may grant leave to amend or withdraw a petition for post-conviction collateral relief at any time. Amendment shall be freely allowed to achieve substantial justice." Pa.R.Crim.P. 905(A).

there is no stated time limit, Sepulveda contends that the Commonwealth failed to provide this Court with a basis to find that the PCRA court abused its discretion by granting Sepulveda leave to amend his first, timely PCRA petition. Id. at 5-6.

In Flanagan, a case relied upon by the PCRA court and Sepulveda, we found no abuse of discretion in a PCRA court's decision to permit a defendant to amend his PCRA petition and raise new claims eleven years after he filed his initial, timely petition. Flanagan, 854 A.2d at 495-96, 499-500. In Flanagan, however, the defendant's PCRA claims had never been ruled upon by the PCRA court, let alone any appellate court. At the time Flanagan sought to amend his original, timely PCRA petition, that petition was still pending, unadjudicated, before the PCRA court. In fact, the Flanagan Court specifically identified this as a factor affecting its assessment of whether the petition could properly be treated as an amendment. We contrasted the procedural posture of Flanagan from those present in Commonwealth v. Rienzi, 827 A.2d 369 (Pa. 2003), wherein we concluded that amendment was not proper. *See* id. at 371 (finding that the Superior Court erred by treating petitioner's second filing as an amendment to his first PCRA petition, as petitioner had withdrawn his first PCRA petition before the PCRA court, only filing the petition at issue ten months later, at which point there was nothing to "amend"); Flanagan, 854 A.2d at 500 n.7 (distinguishing Flanagan from Rienzi because "Flanagan's original petition for collateral relief was never withdrawn or dismissed"). Flanagan, therefore, is inapposite to the case at bar.

So too are the other cases relied upon by Sepulveda in his reply brief. *See* Sepulveda's Reply Brief at 5 (citing Commonwealth v. Williams, 828 A.2d 981, 993 (Pa. 2003) (holding that because the defendant attempted to withdraw his first, timely pro se

PCRA petition without the advice of counsel, and the PCRA court never ruled upon that motion and treated the filing as active, the subsequent petitions filed must be treated as amendments to his first, timely petition); Commonwealth v. Padden, 783 A.2d 299, 308-09 (Pa. Super. 2001) (finding an amended PCRA petition filed by appointed counsel following the initial pro se PCRA petition filed by the defendant was not an untimely, second petition "because the [t]rial [c]ourt did not at any time prior to the filing of the amended petition rule on the merits of the claims contained in the initial petition")).

The PCRA court and Sepulveda are correct that Rule 905(A) gives the PCRA court discretion to "grant leave to amend or withdraw a petition for [PCRA] relief at any time," and states that "[a]mendment shall be freely allowed to achieve substantial justice." Pa.R.Crim.P. 905(A). Rule 905(A) was created "to provide PCRA petitioners with a legitimate opportunity to present their claims to the PCRA court in a manner sufficient to avoid dismissal due to a correctable defect in claim pleading or presentation." Commonwealth v. McGill, 832 A.2d 1014, 1024 (Pa. 2003) (citing Commonwealth v. Williams, 782 A.2d 517, 526-27 (Pa. 2001)).

Once the PCRA court renders a decision on a PCRA petition, however, that matter is concluded before the PCRA court, having been fully adjudicated by that court, and the order generated is a final order that is appealable by the losing party. *See* Pa.R.Crim.P. 910 ("An order granting, denying, dismissing, or otherwise finally disposing of a petition for post-conviction collateral relief shall constitute a final order for purposes of appeal."); Commonwealth v. Bryant, 780 A.2d 646, 648 (Pa. 2001). Although liberal amendment of a PCRA petition is, in some circumstances, permitted beyond the one-year timeframe, *see, e.g.,* Flanagan, 854 A.2d at 499-500, Rule 905(A)

cannot be construed as permitting the rejuvenation of a PCRA petition that has been fully adjudicated by the PCRA court. We have consistently held that in the absence of permission from this Court, a PCRA petitioner is not entitled to raise new claims following our remand for further PCRA proceedings. *See, e.g.*, Commonwealth v. Daniels, 104 A.3d 267, 285 (Pa. 2014) (finding a new PCRA claim raised post-remand from this Court to have been waived, as "[t]his Court explicitly limited the subject matter of the remand to the remaining issues already raised by appellees; we neither invited nor authorized appellees to raise additional collateral claims years after expiration of the PCRA time-bar"); Commonwealth v. Spotz, 18 A.3d 244, 328 (Pa. 2011) (denying the appellant's request for remand for the PCRA court to consider issues first raised in a motion for reconsideration, as this would amount to the PCRA court's consideration of a second, untimely PCRA petition); Commonwealth v. Rainey, 928 A.2d 215, 226 n.9 (Pa. 2007) (stating that because this Court expressly permitted the appellant to raise one new PCRA claim on remand, raising any additional issues post-remand was improper); Commonwealth v. Rush, 838 A.2d 651, 661 (Pa. 2003) (remanding the case for further proceedings before the PCRA court, but instructing that this did not open the door for the appellant to raise new PCRA claims on remand).

Our mandate in Sepulveda II did not bestow upon the PCRA court jurisdiction over the entirety of the PCRA petition. Following our complete review on appeal from the denial of PCRA relief, we winnowed down the issues raised by Sepulveda to one identifiable subpart of one claim, which we ordered the PCRA court to consider in "proceedings upon **limited remand**." Sepulveda II, 55 A.3d at 1151 (emphasis added). Absent an order specifying otherwise, to construe Rule 905(A) as authorizing expansion

of a case after thorough appellate review renders an absurd result. *See* 1 Pa.C.S.A. § 1922(1) (in ascertaining the intent of this Court in enacting a procedural rule, we must presume that the result was not intended to be "absurd, impossible of execution or unreasonable").[18]

Moreover, Rule 905(A) cannot be read or interpreted in a vacuum. Pennsylvania Rule of Appellate Procedure 2591 specifically addresses a lower court's authority on remand. It provides that upon remand from a higher court, the lower court "shall proceed in accordance with the judgment or other order of the appellate court[.]" Pa.R.A.P. 2591.[19] Consequently, the breadth of Rule 905(A) is limited by Pa.R.A.P. 2591. *See* 1 Pa.C.S.A. § 1933 (stating that if two provisions conflict, they shall be construed, if possible, so that both may be given effect; if the conflict is irreconcilable, the specific provision prevails and is to be construed as an exception to the general provision).

Our remand order specifically instructed the PCRA court to consider (1) the propriety of the FCDO's representation of Sepulveda in this matter and (2) whether Sepulveda suffered prejudice by trial counsel's failure to investigate and present mental

---

[18] When construing a Rule of Criminal Procedure, we utilize the Statutory Construction Act when possible. Pa.R.Crim.P. 101(C). The object of any rule interpretation "is to ascertain and effectuate the intention of" this Court. 1 Pa.C.S.A. § 1921(a).

[19] Indeed, it has long been the law in Pennsylvania that following remand, a lower court is permitted to proceed only in accordance with the remand order. *See, e.g.,* Quaker State Oil Ref. Co. v. Talbot, 185 A. 586, 588 (Pa. 1936); *see also* Levy v. Senate of Pa., 94 A.3d 436, 442 (Pa. Commw. 2014) (recognizing "[w]here a case is remanded for a specific and limited purpose, issues not encompassed within the remand order may not be decided on remand," as "[a] remand does not permit a litigant a proverbial second bite at the apple") (internal citations and quotation marks omitted), *appeal denied*, 106 A.3d 727 (Pa. 2014).

health mitigation evidence at the penalty phase. Nonetheless, the PCRA court in this case permitted Sepulveda, on remand, to raise new claims in what it considered to be an amendment to his timely-filed first PCRA petition. While we believe that our case law is clear, to the extent there is any lack of clarity in our prior decisions by their failure to consider Rule 905(A), we specifically hold that a PCRA court does not have discretion to treat new claims raised by a PCRA petitioner as an amended PCRA petition following remand from this Court unless such amendment is expressly authorized in the remand order. Rather, application of the liberal amendment policy of Rule 905(A) requires that the PCRA petition in question is still pending before the PCRA court at the time the request for amendment is made. Following a full and final decision by a PCRA court on a PCRA petition, that court no longer has jurisdiction to make any determinations related to that petition[20] unless, following appeal, the appellate court remands the case for further proceedings in the lower court. In such circumstances, the PCRA court may only act in accordance with the dictates of the remand order. The PCRA court does not have the authority or the discretion to permit a petitioner to raise new claims outside the scope of the remand order and to treat those new claims as an amendment to an adjudicated PCRA petition.[21]

In the case at bar, the PCRA fully addressed the issues raised in Sepulveda's first, timely PCRA petition (which included several amendments) and rendered a final

---

[20] This decision does not affect a PCRA court's authority to "modify or rescind" its order within thirty days of its entry if neither party has appealed its decision. 42 Pa.C.S.A. § 5505.

[21] To hold otherwise would allow "an extra round of collateral attack for certain defendants, unauthorized by the General Assembly," which this Court has expressly condemned. *See* Commonwealth v. Holmes, 79 A.3d 562, 576 (Pa. 2013).

decision on that petition in 2007. Sepulveda appealed from the final order disposing of his first PCRA petition to this Court. After thoroughly considering all of the issues presented on appeal, this Court issued an order remanding the case to the PCRA court for its consideration of two specific and discrete issues. By permitting Sepulveda to amend his otherwise finally decided PCRA petition with new, previously unraised claims, the PCRA court exceeded the scope of our remand order and the scope of its authority. We therefore vacate the portion of the August 14, 2015 PCRA court order granting Sepulveda permission to amend his PCRA petition and deciding the merits of the claims raised.

Order vacated in part. Jurisdiction relinquished.

Chief Justice Saylor and Justices Baer, Todd, Dougherty, Wecht and Mundy join the opinion.