J-S27024-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMIE M. BROWN | : | |
| | : | |
| Appellant | : | No. 1468 WDA 2018 |

Appeal from the PCRA Order Entered September 21, 2018
In the Court of Common Pleas of Beaver County
Criminal Division at No(s):  CP-04-CR-0000913-2001

BEFORE:   OLSON, J., OTT, J., and COLINS[*], J.

MEMORANDUM BY OTT, J.:                          **FILED JULY 16, 2019**

Jamie M. Brown appeals from the order entered September 21, 2018, in the Beaver County Court of Common Pleas, dismissing, after a hearing, his serial petition for collateral relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  Brown seeks relief from the judgment of sentence of 20 to 40 years' imprisonment, imposed on May 29, 2002, following his jury conviction of murder.  On appeal, he asserts the PCRA court erred in dismissing the petition.  For the reasons discussed below, we affirm.

We take the underlying facts and procedural history in this matter from our March 24, 2016 opinion and the PCRA court's September 21, 2018 opinion.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.

This Court previously set forth the factual basis of this case as follows:

> [On March 15, 2001] Aliquippa Police Officer James Naim was on routine foot patrol in the Linmar Housing Plan when [Brown] approached him from the rear firing a nine millimeter handgun. Two bullets struck the officer in the head causing his immediate death. Testimony established that [Brown], who was well known to the law enforcement community, told several people that he was going to kill a police officer to "set an example."

***Commonwealth v. Brown***, 83 A.3d 1063 (Pa.Super.2013) (unpublished memorandum), at 1–2 (internal alterations and citation omitted).

The procedural history of this case is as follows. On May 10, 2002, [Brown] was convicted of third-degree murder. On May 29, 2002, [Brown] was sentenced to 20 to 40 years' imprisonment. This Court affirmed the judgment of sentence, and our Supreme Court denied allowance of appeal. ***Commonwealth v. Brown***, 850 A.2d 5 (Pa.Super.2004) (unpublished memorandum), *appeal denied*, 581 Pa. 670, 863 A.2d 1142 (2004).

On June 30, 2005, [Brown] filed a *pro se* PCRA petition. Counsel was appointed and, on February 13, 2008, the PCRA court denied [Brown's] first PCRA petition. This Court affirmed the denial of PCRA relief, and our Supreme Court denied allowance of appeal. ***Commonwealth v. Brown***, 965 A.2d 289 (Pa.Super.2008) (unpublished memorandum), *appeal denied*, 603 Pa. 689, 983 A.2d 725 (2009).

[Brown] thereafter sought federal *habeas* relief. Such relief was denied. ***Brown v. Mazurkiewicz***, 2012 WL 954628 (W.D.Pa. Mar. 20, 2012). On July 12, 2012, [Brown] filed a *pro se* PCRA petition, his second. That petition was denied and this Court affirmed. ***Commonwealth v. Brown***, 83 A.3d 1063 (Pa.Super.2013) (unpublished memorandum).

On June 7, 2013, [Brown] filed his third *pro se* PCRA petition. Thereafter, [Brown] filed an amended petition along with a motion to disqualify the Office of Attorney General ("OAG") and a motion seeking the PCRA court's recusal. On July 15, 2014, the PCRA

court denied the motion to disqualify and the motion for recusal. On August 12, 2014, the PCRA court issued an amended notice of its intent to dismiss the petition without an evidentiary hearing. *See* Pa.R.Crim.P. 907. On December 22, 2014, the PCRA court dismissed the petition. This timely appeal followed.

*Commonwealth v. Brown*, 141 A.3d 491, 495-496 (Pa. Super. 2016) (footnotes omitted).

On March 24, 2016, this Court affirmed in part, vacated in part, and remanded. *See id.* at 495. While agreeing that Brown's petition was "patently untimely[,]" we found that "there [was] a genuine issue of material fact as to whether [Brown] pled and proved the applicability of the PCRA's newly-discovered fact exception." *Id.* at 507-508. This genuine issue of material fact concerned an affidavit filed by Angela White. Immediately following Officer Naim's murder, White was the subject of a drug investigation. In 2013, she provided an affidavit to Brown in which she stated that, as part of that investigation, there were wiretaps and, on one of them, an unknown individual confessed to killing Officer Naim. *Id.* at 502. We therefore remanded the matter for consideration solely of whether "Brown acted with due diligence in discovering [that there were wiretap tapes and transcripts in an unrelated matter that concerned his case]" and whether the wiretaps constituted admissible evidence. *Id.* at 507.

The PCRA court described the background of the wiretaps, their contents, the events following remand, and its findings of fact as follows:

On March 17, 2001, [Brown] was arrested and charged with [c]riminal [h]omicide relating to the death of Officer James Naim

- 3 -

of the Aliquippa Police Department. Both the City of Aliquippa Police Department and the Beaver County District Attorney's Office requested that the offense be investigated by the Pennsylvania State Police and prosecuted by the Pennsylvania Office of the Attorney General. During the investigation, the Attorney General's Office did file [a]pplications with the Pennsylvania Superior Court seeking authorization to intercept electronic and wire communications of various individuals known to have associations with [Brown]. The Honorable Justin M. Johnson of the Superior Court of Pennsylvania approved three (3) separate [a]pplications for interceptions at Docket Numbers 12-1 W.D. 2001 on March 19, 2001; 12-2 W.D. 2001 on March 22, 2001, and 12-3 W.D. 2001 on April 9, 2001. The authorized intercepts involved the cellular telephones of Michael Glanton, Peris Smith and Michael Bigstaff, Jr. The authorized intercepts covered periods of time from March 19, 2001 through April 16, 2001. The [a]pplications which Judge Johnson authorized all related, by their allegations, to the murder of Officer Naim, and, further, that [Brown] was associated with Anthony Tusweet Smith, Perris Smith (both of whom are cousins of [Brown]), Michael Glanton and Michael Bigstaff, Jr. in the trafficking of illegal drugs.

As a result of the intercepts which were memorialized on thirty-four (34) cassette tapes at Docket Number 12-1 W.D. 2001; fifty-three (53) cassette tapes at Docket Number 12-2 W.D. 2001, and twenty-two (22) cassette tapes at Docket Number 12-3 W.D. 2001 (109 total cassette tapes), the Office of the Attorney General did file additional charges against various individuals, one of whom was Angela Y. White, who also happens to be the maternal aunt of Michael Glanton. On March 30, 2001, fifteen (15) days after the murder of Officer Naim and thirteen (13) days after the arrest of [Brown], the Pennsylvania State Police pulled over and impounded a pick-up truck which was being operated by Angela White with Michael Glanton in the passenger seat, and a subsequent search of the truck revealed twelve (12) kilograms of cocaine in a hidden compartment under the bed of the truck. On November 30, 2001, Ms. White was interviewed by agents of the Pennsylvania Bureau of Narcotics Investigation at Fort Hood, Texas, where she was stationed in the military.

During the interview, which lasted four (4) hours and twenty (20) minutes, the agents did play portions of the taped intercepts for

Ms. White to listen to, and follow-up questions were asked. Some of the intercepts related to conversations between and among the aforementioned Michael Glanton, Perris Smith, Michael Bigstaff, Jr. and other individuals, including Angela White, and those intercepts also led to inquiries by the agents of Ms. White's knowledge of the murder of Officer Naim.

* * * *

Counsel was appointed for [Brown], and [the PCRA court] did grant [m]otions of [c]ourt-appointed counsel to acquire the wiretaps and logs from the Superior Court. Because the wiretaps were then over fifteen (15) years old, and because the Superior Court maintained records of that nature pursuant to internal operating procedures known only to the Superior Court, the initial attempts of [c]ourt-appointed counsel and [the PCRA court] were unsuccessful. [Brown] then retained private counsel with knowledge of the internal operating procedures of the Superior Court who, with and by [o]rder of [the PCRA court], was successful in securing release from the Superior Court of Pennsylvania archives of, first, the logs and tapes of wiretaps (34 in total) at Docket Number 12-1 W.D. 2001, and subsequently, the logs and tapes of wiretaps at Docket Numbers 12-2 W.D. 2001 and 12-3 W.D. 2001. As noted previously, Docket Number 12-2 W.D. 2001 contained 53 cassette tapes and Docket Number 12-3 W.D. 2001 contained an additional 22 cassette tapes, or 109 total cassette tapes at all three (3) Docket Numbers.

Over the course of six and one-half (6½) days, counsel for [Brown], counsel for the Commonwealth, this [c]ourt and this [c]ourt's [l]aw [c]lerks listened to all 109 cassette tapes while simultaneously reviewing all of the handwritten logs maintained simultaneously with the wiretaps of the mobile phone conversations. Those six and one-half (6½) days were conducted *in camera* in the [c]ourtroom with only those four (4) representatives being present. Following review of the logs and wiretaps, the [c]ourt did convene a PCRA Hearing in [c]ourt on November 29, 2017. At that hearing, the [c]ourt granted [Brown's] counsel's [m]otion that the testimony of Angela White be sealed, after which defense counsel called two (2) witnesses who testified in [o]pen [c]ourt.

FINDINGS OF FACT

1.    There is no recording or log of recordings at Docket Numbers 12-1,12-2 or 12-3 W.D. 2001 which contain the statement of either the caller who initiated the phone call nor the recipient who answered the phone call, wherein any person claimed responsibility for the "killing of the police officer on Linmar, Alliquippa"[.]

2.    There is no recording or log of recordings at Docket Numbers 12-1, 12-2 or 12-3 W.D. 2001, which contains the statement of either the caller nor the recipient of the call wherein any person was "the killer that was bragging about what he did".

3.    The affidavit signed by Angela White at the request of Caprice Allen, who was retained by the Innocence Project of Point Park University to secure the affidavit, states that she was "asked about this" (a wiretap) "when I was being interrogated on the Army Base in Fort Hood, Texas".

4.    An investigative report authored by Pennsylvania Office of Attorney General Narcotics Agent James J. Farmer reveals that an interview of Angela White took place at Fort Hood, Texas on November 30, 2001.

5.    A redacted copy of Agent Farmer's report was provided by the Commonwealth to Erika Kreisman [Brown's trial counsel] in discovery.  PCRA Hearing Transcript, Page 10, Lines 2 through 19; Page 12, Line 24, "it might have been".  Also, *see* [Brown's] Exhibits Nos. 2 and 3 as entered into the record at the PCRA Hearing.

6.    Attorney Kreisman did not review the discovery she received pre trial before coming to testify in the PCRA Hearing.

7.    The parties submitted a [j]oint [m]otion to [s]upplement [r]ecord well after the PCRA Hearing.  The [j]oint [m]otion will be granted, and the unredacted report of Agent Farmer will be made part of this record, and, as also requested by the parties, kept under seal.

8.    The report of Agent Farmer is eight (8) pages in length, mostly single spaced, and contains only two (2) paragraphs, Nos. 31 and 32, in which the Agents focused on any knowledge that Ms. White may have had concerning the death of Officer Naim.

Those two (2) paragraphs were introduced into the record by [Brown] as Page 2 of Exhibit 2.

9. A complete review of the eight-page report of Agent Farmer reveals that all lines redacted from the report relate to the charges filed against Ms. White, and no other references to the death of Officer Naim are made elsewhere in the report.

10. Per the report of Agent Farmer, as set forth on Page 2 of Exhibit 2, when asked if she knows or has heard any information about Jamie Brown, White stated she only knows of him from the newspapers and through Charlene (her sister) telling her Brown was arrested for killing a cop." She again stated, "she does not know Brown. . ."

11. At the PCRA Hearing, Angela White did testify on behalf of [Brown], and her testimony, for the most part, was consistent with the contents of the affidavit that she provided to Caprice Allen some twelve (12) years after the untimely death of Officer Naim.

PCRA Court Opinion, 9/21/2018, at unnumbered pages 1-7.

On September 21, 2018, the PCRA court denied Brown's serial PCRA petition. On October 11, 2017, the PCRA court issued an opinion denying Brown's request for discovery. The instant appeal followed.[2]

On appeal, Brown raises seven issues. Brown's Brief, at 5-6. Five of those issues contend that the PCRA court erred in dismissing his petition because of his meritorious newly discovered evidence, **Brady**,[3] and

---

[2] The PCRA court did not order Brown to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On November 26, 2018, the Honorable Richard Mancini, President Judge of the Court of Common Pleas of Beaver County, issued a Rule 1925(a) opinion noting that the judge who had presided over Brown's case had retired and adopting its September 21, 2018 opinion.

[3] **Brady v. Maryland**, 373 U.S. 83 (1963).

- 7 -

governmental interference claims. *Id.* One issue is a challenge to the constitutionality of the PCRA's time-bar; and the remaining challenges the denial of Brown's request for discovery. *Id.*

"In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Mitchell*, 141 A.3d 1277, 1283–1284 (Pa. 2016) (internal punctuation and citation omitted). Further, because this was on a remand, the jurisdiction of the PCRA court was limited. Our Supreme Court has stated:

> Following a full and final decision by a PCRA court on a PCRA petition, that court no longer has jurisdiction to make any determinations related to that petition unless, following appeal, the appellate court remands the case for further proceedings in the lower court. In such circumstances, the PCRA court may only act in accordance with the dictates of the remand order. The PCRA court does not have the authority or the discretion to permit a petitioner to raise new claims outside the scope of the remand order and to treat those new claims as an amendment to an adjudicated PCRA petition.

*Commonwealth v. Sepulveda*, 144 A.3d 1270, 1280 (Pa. 2016) (footnotes omitted); *see also Commonwealth v. Rivera*, 199 A.3d 365, 388-389 (Pa. 2018) (holding that following remand PCRA petitioner is not entitled to raise new claims and citing cases).

Lastly, this Court has previously explained the interplay between the newly discovered facts exception to the timeliness requirements and a substantive collateral claim of after-discovered evidence as follows:

- 8 -

The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence. Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced. Additionally, the focus of this exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts.

The timeliness exception set forth at Section 9545(b)(1)(ii) has often mistakenly been referred to as the "after-discovered evidence" exception. This shorthand reference was a misnomer, since the plain language of subsection (b)(1)(ii) does not require the petitioner to allege and prove a claim of "after-discovered evidence." Rather, as an initial jurisdictional threshold, Section 9545(b)(1)(ii) requires a petitioner to allege and prove that there were facts unknown to him and that he exercised due diligence in discovering those facts. Once jurisdiction is established, a PCRA petitioner can present a substantive after-discovered-evidence claim. *See* 42 Pa.C.S.A. § 9543(a)(2)(vi) (explaining that to be eligible for relief under PCRA, petitioner must plead and prove by preponderance of evidence that conviction or sentence resulted from, *inter alia*, unavailability at time of trial of exculpatory evidence that has subsequently become available and would have changed outcome of trial if it had been introduced). In other words, the "new facts" exception at:

> [S]ubsection (b)(1)(ii) has two components, which must be alleged and proved. Namely, the petitioner must establish that: 1) the **facts** upon which the claim was predicated were **unknown** and 2) could not have been ascertained by the exercise of **due diligence**. If the petitioner alleges and proves these two components, then the PCRA court has jurisdiction over the claim under this subsection.

Thus, the "new facts" exception at Section 9545(b)(1)(ii) does not require any merits analysis of an underlying after-discovered-evidence claim.

*Commonwealth v. Brown*, 111 A.3d 171, 176–177 (Pa. Super. 2015) (some citations and quotation marks omitted, emphases in original), *appeal denied*, 125 A.3d 1197 (Pa. 2015).

With this framework in mind, we now turn to the issues raised by Brown. We initially note the following, the prior panel of this Court held that Brown's petition was "patently untimely" and that the White affidavit in and of itself was not a newly discovered fact. **Brown**, **supra** at 500, 502. Moreover, we remanded this matter in order to ascertain if Brown acted with due diligence in obtaining the White affidavit,[4] if there was information on the wiretaps that was admissible, and, if so, whether it constituted a newly discovered fact and/or **Brady** material.

Brown's first issue is less a separate issue than a compilation of the issues that follow it, as he generally states that his petition was timely under either the newly discovered facts and/or the governmental interference exception. **See** Brown's Brief, at 45-52. Therefore, we will discuss the majority of the arguments raised in that issue in combination with the related claims discussed below. However, to the extent that Brown raises a claim of governmental interference in his first issue, we find that it was not properly before the PCRA court as Brown raised it for the first time in his post-remand amended PCRA petition filed without leave of court on April 28, 2017. **See**

_____

[4] The PCRA court held that Brown acted with due diligence. PCRA Ct. Op. at 7.

Amended Petition for Post-Conviction Relief, 4/28/2017, at 21. As discussed above, our Supreme Court has specifically held that a PCRA petitioner cannot raise new claims on remand. *Rivera*, *supra* at 388-389. Thus, that portion of Brown's first claim fails.

In part of his first claim, and his second and third claims, Brown contends that the PCRA court erred in holding that the information and testimony of Angela White neither were facts nor newly discovered. Brown's Brief, at 42-59. However, Brown has waived these claims.

To the extent that Brown is claiming that the White affidavit in and of itself constituted a newly discovered fact, this Court has already ruled that it does not. *See Brown*, *supra* at 502. That decision is binding on this Court under the law of the case doctrine. This doctrine "refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." *Commonwealth v Starr*, 664 A.2d 1326, 1331 (Pa. 1995). "Among the related but distinct rules which make up the law of the case doctrine are that: . . . (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court. . . ." *Id.* Thus, this Court cannot alter the prior panel's decision that the White affidavit is not newly discovered evidence.

In any event, while this Court does have the transcript of the PCRA hearing, that transcript does not contain the testimony of Angela White, which, at Brown's request, the PCRA court placed under seal. **See** PCRA Ct. Op., at unnumbered page 5; N.T. PCRA Hearing 11/29/2016, at 1-37. Moreover, this Court examined the notice of appeal, which does not contain a request for transcripts; Brown did not send a copy of the notice of appeal to the court recorder, and in the notice he erroneously states, "The complete transcript of the proceedings has been lodged of record." Notice of Appeal, 10/05/2018.

We have stated "[w]hen the appellant . . . fails to conform to the requirements of [Pa.R.A.P.] 1911 [relating to transcript requests], any claims that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for the purpose of appellate review." **Commonwealth v. Preston**, 904 A.2d 1, 7 (Pa. Super. 2006) (*en banc*), *appeal denied*, 916 A.2d 632 (Pa. 2007) (citation omitted). Further, it is the appellant's responsibility to make certain that the certified record contains all items necessary to ensure that this Court is able to review his claims. **See Commonwealth v. B.D.G.**, 959 A.2d 362, 372 (Pa. Super. 2008) (*en banc*). This Court has stated:

> It is black letter law in this jurisdiction that an appellate court cannot consider anything which is not part of the record in the case. It is also well-settled in this jurisdiction that it is [a]ppellant's responsibility to supply this Court with a complete record for purposes of review. A failure by appellant to insure that the original record certified for appeal contains sufficient information to conduct a proper review constitutes waiver of the issue sought to be examined.

- 12 -

*Commonwealth v. Martz*, 926 A.2d 514, 524-525 (Pa. Super. 2007), *appeal denied*, 940 A.2d 363 (Pa. 2008) (citations and quotation marks omitted). Accordingly, we find that Brown's failure to ensure that the PCRA court sent the sealed portion of the PCRA transcript that contains Angela White's testimony to this Court waived part of his first issue, as well as his second and third issues on appeal.[5]

In his fourth claim, Brown contends that the PCRA's time bar is unconstitutional as applied to him. Brown's Brief, at 59-65. However, as Brown also raised this claim for the first time in his post-remand April 28, 2017 amended PCRA petition, and as it is well beyond the scope of our remand order, the PCRA court had no jurisdiction to consider it. *See Sepulveda*, *supra* at 1280. Thus, the claim fails.[6]

---

[5] Moreover, even if we were in possession of White's testimony, it is highly unlikely that we would have resolved this issue in Brown's favor. In its opinion, the PCRA court stated that White's testimony "for the most part, was consistent with the contents of the affidavit[.]" PCRA Ct. Op., at unnumbered page 7. The parties do not dispute that the wiretaps did not corroborate the allegations made in the affidavit. *Id.* at 8. This Court already ruled that the affidavit, absent corroboration, did not constitute a newly discovered fact. *Brown*, *supra* at 502. Therefore, we see no basis upon which we would have overruled the PCRA court's finding that testimony which just repeated the same uncorroborated and likely inadmissible information would not have constituted a newly discovered fact that would render Brown's PCRA petition timely.

[6] In any event, the claim is meritless. Our Supreme Court has stated:

In part of his first issue, and his fifth issue, Brown maintains that the PCRA court erred in not granting him a new trial because the Commonwealth failed to turn over to him an unredacted[7] copy of Angela White's 2001 interview with Pennsylvania Attorney General narcotics agent James J.

_____

This Court has held that the PCRA's time restriction is constitutionally valid. **See Commonwealth v. Peterkin**, 554 Pa. 547, 722 A.2d 638, 643 (1998) ("the PCRA's time limitation upon the filing of PCRA petitions does not unreasonably or unconstitutionally limit [an appellant's] constitutional right to habeas corpus relief."). Furthermore, we have held that the PCRA time limits are jurisdictional in nature, implicating a court's very power to adjudicate a controversy. **See Commonwealth v. Fahy**, 558 Pa. 313, 737 A.2d 214 (1999). Accordingly, the "period for filing a PCRA petition is not subject to the doctrine of equitable tolling;" instead, the time for filing a PCRA petition can be extended only to the extent that the PCRA permits it to be extended, *i.e.*, by operation of one of the statutorily enumerated exceptions to the PCRA time-bar. **Id.** at 222.

More recently, in **Commonwealth v. Robinson**, 575 Pa. 500, 837 A.2d 1157 (2003), we recounted this Court's rejection of "various theories devised to avoid the effects of the one-year time limitation" of the PCRA. **Id.** at 1157 (collecting cases). In **Robinson**, we reiterated the strictly jurisdictional nature of the PCRA time-bar and that "the PCRA confers no authority upon this Court to fashion *ad hoc* equitable exceptions to the PCRA time-bar in addition to those exceptions expressly delineated in the Act." **Id.** at 1161 (quoting **Commonwealth v. Eller**, 569 Pa. 622, 807 A.2d 838, 845 (2002)).

**Commonwealth v. Cruz**, 852 A.2d 287, 292 (Pa. 2004).

[7] The Commonwealth did turn over a redacted copy of the interview to Brown's counsel prior to trial. PCRA Ct. Op., at unnumbered page 6; N.T. PCRA Hearing, 11/29/2016, at 10 and 12. The PCRA court held that the portion turned over to trial counsel contained the only references in the interview to the shooting of Officer Naim. PCRA Ct. Op., at unnumbered page 6.

Farmer, and also failed to turn over evidence in the form of certain tape-recorded statements made in the wiretaps. Brown's Brief, at 42-52, 65-76. Again, Brown waived these claims.

At the request of the parties, the PCRA court entered the unredacted White interview report as a sealed exhibit at the PCRA hearing. PCRA Ct. Op., at unnumbered page 6. None of the PCRA hearing exhibits, including both the redacted and unredacted White interview reports, are contained in the certified record, and we see nothing that demonstrates that Brown requested that the unredacted interview be unsealed or that any of the PCRA hearing exhibits be forwarded to this Court.

Moreover, as per procedure, the PCRA court returned the wiretaps and their logs to this Court's archives, so they are not contained in the certified record. Brown could have moved pursuant to 18 Pa.C.S.A. § 5715 to unseal them and have them forwarded to this panel. However, he did not do so.

As discussed above, it is the appellant's responsibility to ensure that this Court has all documentation necessary to review this appeal. **See B.D.G.**, **supra** at 372. In the absence of the unredacted White interview report and the wiretaps, we are unable to assess the merits of Brown's claim that failure to provide them to him prior to trial either constituted a **Brady** violation and/or newly discovered evidence. Therefore, we find Brown waived part of his first claim and his fifth claim. **See Martz**, **supra** at 525.

In part of his first claim and his sixth claim, Brown argues that the PCRA court erred in not considering newly discovered facts in the form of affidavits from his co-defendant Acey Taylor and former Commonwealth witness Darnell Hines. Brown's Brief at 42-52, 76-86. We disagree.

Brown raised these claims for the first time in his post-remand April 28, 2017 amended PCRA petition. Amended Petition for Post-Conviction Relief, at 10-12. As stated above, following a limited remand, an appellant cannot raise new claims exceeding the scope of the remand. *See Sepulveda*, *supra* at 1280; *see also Rivera*, *supra* at 388-389. Here, as discussed above, the remand was limited to the White affidavit and the wiretaps. Taylor and Hines' recantation affidavits are completely unrelated to White or to the wiretaps. Moreover, we find Brown's attempts to both limit the scope of the holding in *Sepulveda* and to distinguish it utterly unpersuasive. The PCRA court was without jurisdiction to consider Brown's new and unrelated claims of newly discovered evidence. Thus, the remainder of his first claim and his sixth claim fail.

In his seventh and final issue, Brown avers that the trial court erred in denying his request for discovery. Brown's Brief, at 86-89. In his request, Brown sought:

> . . . any investigative files maintained by the Aliquippa Police Department, Beaver County detectives, the Office of Attorney General, the Pennsylvania State Police, and any information provided by the F.B.I. to the aforementioned state or local law enforcement as it relates to an investigation of Anthony Tusweet Smith, Michael "Mike-Mike" Glanton, and Peris Smith and their

involvement in the murder of Officer Nairn, including but not limited to any statements provided by Anthony "Ali" Dorsett.

In addition, counsel requests copies of any police files maintained by the Aliquippa Police Department, Office of Attorney General, Pennsylvania State Police, Beaver County detectives, and any information provided by the F.B.I. to the aforementioned state or local law enforcement pertaining to a parallel drug investigation of the Smith brothers and Michael Glanton.

Counsel also seeks discovery of any investigative files maintained by the Aliquippa Police Department, Beaver County detectives, the Office of Attorney General, the Pennsylvania State Police, and any information provided by the F.B.I. to the aforementioned state or local law enforcement as it relates to an investigation into possible Aliquippa police corruption at the time of Officer Naim's death, not limited to grand jury information.

Request for Discovery Pursuant to Pa.R.Crim.P. 902(E), 9/25/2017, at 4-5 (paragraph enumeration omitted).

The Pennsylvania Rules of Criminal Procedure proscribe discovery during collateral proceedings "except upon leave of court after a showing of exceptional circumstances." Pa.R.Crim.P. 902(E)(1). "We review the denial of a discovery request in post-conviction proceedings for abuse of discretion." *Commonwealth v. Hanible*, 30 A.3d 426, 452 (Pa. 2011), *cert. denied*, 568 U.S. 1091 (2013). "An abuse of discretion is not a mere error in judgment. Instead, it is a decision based on bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law. Moreover, we recall that the appellant has the duty to convince us an abuse occurred." *Commonwealth v. Frey*, 41 A.3d 605, 611 (Pa. Super. 2012), *appeal denied,* 65 A.3d 413 (Pa. 2013).

Here, Brown has not persuaded us that the PCRA court abused its discretion. In its decision denying Brown's request, the PCRA court detailed the extent of the information already provided to Brown prior to trial about the possible involvement of Anthony Tusweet Smith in the murder of Officer Naim, and that Angela White, Michael Glanton and others in their circle might have information about the incident. PCRA Court Opinion, 10/11/2017, at unnumbered pages 2-3. It then found that Brown failed to identify "specific documents or items that were not disclosed pre-trial or during the trial." *Id.* at 4. It concluded that Brown's exceedingly broad request was "speculative and a baseless fishing expedition." *Id.* Having reviewed the record, which supports its findings, we discern no abuse of discretion. *See Frey*, *supra* at 611. Brown's final claim fails.

Accordingly, for the reasons discussed above, we affirm the denial of Brown's third PCRA petition.

Order affirmed.

Judge Colins joins in this memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>7/16/2019</u>