J-S34012-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
TREY DARON GUNTER :
:
Appellant : No. 1185 WDA 2018

Appeal from the PCRA Order Entered July 27, 2018
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0003499-2014

BEFORE: DUBOW, J., McLAUGHLIN, J., and COLINS*, J.

MEMORANDUM BY DUBOW, J.: FILED AUGUST 13, 2019

Appellant, Trey Daron Gunter, appeals from the July 27, 2018 Order entered in the Erie County Court of Common Pleas dismissing his first Petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546, without a hearing. After careful review, we affirm.

The underlying facts and procedural history are, briefly, as follows. On November 17, 2014, Appellant and two other men, Ryan Andrews and Michael Barron, initiated a physical altercation with the victim, Tobiah Johnson, which ended when Appellant shot the victim in the back, killing him.

On January 20, 2015, the Commonwealth charged Appellant with Criminal Homicide, Aggravated Assault, Recklessly Endangering Another Person, Possessing Instruments of Crime, and Conspiracy to Commit Criminal Homicide. On September 23, 2015, Appellant entered into an open guilty plea

_____

* Retired Senior Judge assigned to the Superior Court.

to Third-Degree Murder.[1, 2] On February 9, 2016, the trial court sentenced Appellant to a term of 15 to 40 years' incarceration. Appellant filed a Motion to Modify Sentence, which the trial court denied.

Appellant filed a direct appeal from his Judgment of Sentence challenging the voluntariness of his plea and the discretionary aspects of his sentence. On May 8, 2017, this Court affirmed Appellant's Judgment of Sentence. See Commonwealth v. Gunter, 170 A.3d 1200 (Pa. Super. 2017) (unpublished memorandum). Appellant did not file a Petition for Allowance of Appeal with the Pennsylvania Supreme Court. His Judgment of Sentence, therefore, became final on August 8, 2017. See 42 Pa.C.S. § 9545(b)(3).

On January 19, 2018, Appellant timely filed pro se the instant PCRA Petition in which he claimed that his trial counsel had been ineffective and that he recently become aware of exculpatory evidence. See Petition, 1/19/18, at 2, 4. The PCRA court appointed counsel, who on May 14, 2018, filed a Supplemental PCRA Petition. In the Supplemental Petition, Appellant developed his newly-discovered evidence claim.[3] In particular, he alleged that

_____

[1] 18 Pa.C.S. § 2502(c).

[2] In exchange for his plea, the Commonwealth nolle prossed the remaining charges.

[3] Appellant did not, however, reiterate or develop further his ineffective assistance of counsel claim.

the Commonwealth's key witness, Darsche Jackson, had published a Facebook Live video in which she disclosed that she had new information about the sequence of events that led to Appellant shooting the victim, including that the victim had fired the first shot.[4] Supplemental Petition, 5/14/18, at 1. Appellant asserted that this disclosure was contrary to Ms. Jackson's previous statements to police and her testimony at Appellant's preliminary hearing. Id. Appellant "fully confirmed and documented" this new account of events and, therefore, claimed that it established "evidence of provocation" by the victim and a "factual and legal predicate for the invocation of a claim of self-defense" which Appellant's plea counsel had previously dismissed.[5] Id. at 1-2. Appellant claims that if this evidence had been known to him, he would not have entered a guilty plea and instead would have invoked a "self-defense" or "defense of others" justification at trial. Id. at 2. In light of this alleged newly-discovered evidence, Appellant sought leave to withdraw his guilty plea. In support of his claims, Appellant appended to his Supplemental Petition his affidavit explaining the nature of the discovery of the new evidence and a copy

---

[4] In a letter to his attorney dated April 30, 2018, Appellant notes that Ms. Jackson published the Facebook Live video on November 17, 2016, but claims he only became aware of it on January 9, 2017.

[5] Mr. Andrews and Mr. Barron also pleaded guilty to offenses arising from this altercation. Neither co-defendant raised the possibility of a self-defense claim.

of a transcript of a March 31, 2018 interview of Ms. Jackson conducted by a private investigator, Mr. Barry W. Fox, at Appellant's behest.

On July 3, 2018, the PCRA court notified Appellant of its intent to dismiss his Petition without a hearing pursuant to Pa.R.Crim.P. 907. Appellant did not file a Response to the court's Rule 907 Notice.

On July 27, the PCRA court dismissed Appellant's Petition without a hearing. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.[6]

Appellant raises the following issue on appeal:

[] Whether the PCRA [c]ourt erred by failing to grant relief when Appellant presented exculpatory evidence that had become available after sentencing and would have changed the outcome of the proceeding?

Appellant's Brief at 4.

Appellant claims that the PCRA court erred in dismissing his Petition without a hearing because Ms. Jackson's statement is exculpatory and would have changed the outcome of the proceeding had Appellant known it before entering his guilty plea. Id. at 19-23.

We review the denial of a PCRA Petition to determine whether the record supports the PCRA court's findings and whether its order is otherwise free of legal error. Commonwealth v. Fears, 86 A.3d 795, 803 (Pa. 2014). This Court grants great deference to the findings of the PCRA court if they are supported by the record. Commonwealth v. Boyd, 923 A.2d 513, 515 (Pa.

_____

[6] In its Rule 1925(a) Opinion, the PCRA court relied on its July 3, 2018 Rule 907 Notice to explain its reasons for dismissing Appellant's Petition. We, therefore, refer to the court's Rule 907 Notice as its "Opinion."

Super. 2007). We give no such deference, however, to the court's legal conclusions. Commonwealth v. Ford, 44 A.3d 1190, 1194 (Pa. Super. 2012).

To be eligible for relief pursuant to the PCRA, Appellant must establish, inter alia, that his conviction or sentence resulted from one or more of the enumerated errors or defects found in 42 Pa.C.S. § 9543(a)(2). Appellant must also establish that the issues raised in the PCRA petition have not been previously litigated or waived. 42 Pa.C.S. § 9543(a)(3). An allegation of error "is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal[,] or in a prior state postconviction proceeding." 42 Pa.C.S. § 9544(b).

Relevant here, the PCRA provides relief for a petitioner who demonstrates his conviction or sentence resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543(a)(2)(vi). To establish a claim of newly discovered evidence, a petitioner must prove that: "(1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict." Commonwealth v. Sepulveda, 144 A.3d 1270, 1276 n.14 (Pa. 2016). Newly discovered evidence must be producible and admissible in order to entitle a petitioner to relief. Commonwealth v. Castro, 93 A.3d

818, 825 (Pa. 2014). There is no right to a PCRA hearing; a hearing is unnecessary where the PCRA court can determine from the record that there are no genuine issues of material fact. Commonwealth v. Jones, 942 A.2d 903, 906 (Pa. Super. 2008).

Appellant notes that, in her preliminary hearing testimony, Ms. Jackson testified that she did not see where the first shot came from and that the shot came from "an unknown source." Appellant's Brief at 11-13 (citing N.T., 12/16/14, at 16, 38). She then testified that Appellant fired the first shot. Id. at 14 (citing N.T. at 40). Appellant emphasizes, however, that, when later interviewed by the private investigator hired by Appellant after learning of Ms. Jackson's Facebook Live video, Ms. Jackson stated that it was the victim, and not Appellant, who fired the first shot. Id. at 14-15. Appellant also avers that the PCRA court erred by failing to hold an evidentiary hearing on his claim. Id. at 23-25.

The Honorable John J. Trucilla, who presided over all stages of this proceeding, has authored a comprehensive, thorough, and well-reasoned Opinion, citing to the record and relevant case law in addressing Appellant's claim. See PCRA Court Opinion, 7/3/18, at 5-9 (concluding: (1) that Ms. Jackson's testimony is irrelevant to Appellant's subjective belief as to whether he was in imminent fear of death or serious bodily injury at the time of the incident; and (2) that Appellant failed to satisfy the four requisite elements of a meritorious "after discovered evidence" claim because Ms. Jackson's post-conviction statement: (a) is not exculpatory; (b) is cumulative and

corroborative of her prior statement; (c) was available to Appellant prior to his guilty plea; and (d) would not have compelled a different outcome). The record supports the PCRA court's findings and its Order is otherwise free of legal error. We, thus, affirm on the basis of the PCRA court's July 3, 2018 Opinion.[7]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/13/2019

_____

[7] Moreover, because it was clear from the record that Appellant was not entitled to relief, the PCRA court did not err in not holding an evidentiary hearing on Appellant's claims.

COMMONWEALTH OF PENNSYLVANIA

v.

TREY D. GUNTER

: IN THE COURT OF COMMON PLEAS
: OF ERIE COUNTY, PENNSYLVANIA
:
: CRIMINAL DIVISION
:
: NO. 3499 – 2014

2018 JUL -3 PM 2: 38

ERIE COUNTY
CLERK OF COURTS
ERIE, PA 16501

## NOTICE OF INTENT TO DISMISS PCRA
## PURSUANT TO Pa.R.Crim.P. 907

AND NOW, to-wit, this 2nd day of July, 2018, before this Court is Trey D. Gunter's

(Petitioner) first Motion for Post Conviction Collateral Relief filed on January 19, 2018, and

supplemented by Attorney William Hathaway on May 14, 2018. This Court finds that Petitioner

has failed to state a meritorious claim under the Post Conviction Relief Act (PCRA).

Accordingly, notice is hereby given that Petitioner's PCRA Petition will be dismissed without an

evidentiary hearing. Petitioner shall have twenty days from the date of this Notice to file and

serve objections to this Notice.

## Factual and Procedural History

The Superior Court of Pennsylvania summarized the facts of this case as follows:

[Appellant's conviction stems] from an incident that occurred on November 17, 2014, at an apartment off campus of Edinboro University. Appellant, a Pittsburgh native, was an Edinboro student one semester away from graduating. The victim, Tobiah Johnson, had taken Appellant's gun several days earlier. Appellant obtained another gun, and as alleged by the Commonwealth, with the help of Ryan Andrews and Michael Barron, confronted the victim outside of the victim's apartment. The Commonwealth further alleged that Mr. Barron was waiting outside of the victim's apartment, and that when the victim came out, Mr. Barron punched him in his head, knocking him to the ground. Appellant and Mr. Andrews got out of their vehicle and assaulted the victim. When the victim tried to get up, Appellant shot him in his back, killing him.

*Commonwealth v. Gunter*, No. 830 WDA 2016, 2017 WL 1906089 at 1-2 (Pa. Super. 2016).

## APPENDIX A

On January 20, 2015, Petitioner was charged with Criminal Homicide,[1] Aggravated Assault,[2] Recklessly Endangering Another Person,[3] Possessing Instruments of Crime,[4] and Criminal Conspiracy to Commit Criminal Homicide.[5] The Commonwealth and Petitioner reached a plea agreement where Petitioner would plead guilty to Murder of the Third Degree; in exchange, the Commonwealth would nolle pros the remaining charges. On September 23, 2015, a plea colloquy was held at which time the Court determined Petitioner's plea to Murder of the Third Degree was knowing and voluntary. A sentencing hearing was subsequently scheduled for February 9, 2016. At this hearing, the Court sentenced Petitioner at count one, Murder of the Third Degree, to fifteen years (180 months) period of forty years (480 months) of incarceration.

On February 18, 2016, Petitioner, through Christopher Capozzi, Esquire, filed a Motion to Modify Sentence, requesting a downward modification of the sentence imposed. On the same day, Attorney Capozzi filed a Motion to Withdraw or be Appointed as Counsel for Defendant. On February 18, 2016, Petitioner filed a *pro se* "Petition for Appointment of Counsel for Appeal Purposes." On February 19, 2016, the Court issued an Order granting Attorney Capozzi's Motion to Withdraw or be Appointed as Counsel for Defendant and permitting him to withdraw as counsel. On March 11, 2016, the Court issued a Memorandum Opinion and Order denying the Motion to Modify Sentence.

On February 22, 2016, the Court issued an Order granting Petitioner's *pro se* "Petition for Appointment of Counsel for Appeal Purposes". Petitioner filed another *pro se* motion for appointment of counsel on March 19, 2016, and another on April 4, 2016. The Court denied these motions as moot in an Order dated April 21, 2016. Emily M. Merski, Esquire, was

---

[1] 18 P.S. §2501(a).
[2] 18 P.S. §2702(a)(1).
[3] 18 P.S. §2705.
[4] 18 P.S. §907(a).
[5] 18 P.S. §903; 18 P.S. §2501(a).

2

subsequently appointed as Petitioner's counsel. On May 10, 2016, Petitioner, through Attorney Merski, filed a Petition for Reinstatement of Right to Appeal, which was granted per an Order dated May 25, 2016. Petitioner timely filed a Notice of Appeal on June 9, 2016. On June 15, 2016, the Court directed Petitioner to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) within twenty-one days. Petitioner timely filed his Statement of Matters Complained of on Appeal on June 28, 2016.

On August 8, 2016, the Court issued a Memorandum Opinion detailing the reasons why Petitioner's appeal should be dismissed. On October 20, 2016, Petitioner filed an Application for Extension of Time to File Brief. On October 21, 2016, the Superior Court issued an Order dismissing Petitioner's appeal and directing Attorney Merski to file a certification that Petitioner had been notified of the dismissal within ten (10) days. On October 24, 2016, Petitioner filed a *pro se* "Request for Plea and Sentencing Transcripts, and the Preliminary Hearing Transcripts of Ryan Andrews and Michael Barron." On November 2, 2016, this Court issued an Order denying this request. On the same day, the Superior Court issued an Order vacating the October 21, 2016 Order and granting Petitioner's Application for Extension of Time to File Brief. Petitioner was given thirty (30) days in which to submit a brief.

Pursuant to the Superior Court's directive, on December 8, 2016, Attorney Merski filed an *Anders* Brief as well as an Application to Withdraw as Counsel with the Superior Court. On March 3, 2017, Petitioner filed a Motion for Remand. On May 8, 2017, the Superior Court of Pennsylvania affirmed Petitioner's judgment of sentence, denied his Motion for Remand, and granted Attorney Merski's Application to Withdraw as Counsel. *Commonwealth v. Gunter*, No. 830 WDA 2016, 2017 WL 1906089 at 9 (Pa. Super. 2017). Subsequently, Petitioner filed the instant *pro se* Motion for Post Conviction Collateral Relief on January 19, 2018. Following

3

clarification that Petitioner was, in fact, seeking the appointment of counsel to represent him during his PCRA proceeding, Attorney William Hathaway was appointed by this Court on February 28, 2018. Thereafter, on May 14, 2018, Attorney Hathaway filed a Supplement to Motion For Post Conviction Collateral Relief (hereinafter "PCRA") and the matter is now before the Court.

## Discussion

In Petitioner's first claim for relief, he alleges he is entitled withdraw his guilty plea pursuant to 42 Pa.C.S.A. §9543(a)(2)(vi), which provides relief where a petitioner can prove "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi).[6] Specifically, Petitioner contends that a prospective witness, Darsche Jackson, has "recanted" her prior testimony, and that her new statement, "serves to establish evidence of provocation by Tobiah Johnson and a factual and legal predicate for the invocation of self-defense." Supplement To Motion For Post Conviction Relief, at 1-2. For numerous reasons, this claim is without legal or factual merit and must be dismissed.

The purpose of the PCRA is to afford persons who have been convicted of a crime they did not commit an avenue to obtain collateral relief. 42 Pa.C.S.A. § 9542. The PCRA eligibility statute provides:

> (a) General rule.--To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following:
> (1) That the petitioner has been convicted of a crime under the laws of this Commonwealth and is at the time relief is granted:

---

[6] Although Petitioner's conviction resulted from a guilty plea rather than as a result of trial, "after-discovered evidence which would justify a new trial would also entitle defendant to withdraw his guilty plea" and applies in the context of a PCRA proceeding. *Commonwealth v. Peoples*, 319 A.2d 679, 681 (Pa. 1974).

4

(i) currently serving a sentence of imprisonment, probation or parole for the crime;

(ii) awaiting execution of a sentence of death for the crime; or

(iii) serving a sentence which must expire before the person may commence serving the disputed sentence.

(2) That the conviction or sentence resulted from one or more of the following:

(i) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.

(iv) The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

(v) Deleted.

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

(vii) The imposition of a sentence greater than the lawful maximum.

(viii) A proceeding in a tribunal without jurisdiction.

(3) That the allegation of error has not been previously litigated or waived.

(4) That the failure to litigate the issue prior to or during trial, during unitary review or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel.

42 Pa.C.S.A. § 9543.

Before delving into the specifics of Petitioner's argument, this Court observes that no amount of after discovered evidence would allow Petitioner to credibly contend that he now has proof that he acted in self-defense. His contention that he was unaware of the factual and legal predicate for a self-defense claim and was deprived of this defense is patently meritless because it is simply contrary to the law. "The use of force upon or toward another person is justifiable when the **actor** believes that such force is immediately necessary for the purpose of protecting

5

himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S.A. § 505(a) (emphasis added).

> In order for a defendant to successfully claim self-defense, he or she must meet the following three elements: (1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that the use of deadly force was necessary to prevent such harm; (2) the defendant did not provoke the incident which resulted in the victim's death; and (3) the defendant did not violate any duty to retreat. *Commonwealth v. Mouzon*, 617 Pa. 527, 53 A.3d 738, 740 (2012) (citations omitted). As previously noted, the Commonwealth has the burden of disproving self-defense beyond a reasonable doubt and may do so by disproving any one of the three self-defense elements the defendant must meet. *Id.* at 740–741.

*Commonwealth v. Patterson*, 180 A.3d 1217, 1231 (Pa. Super. 2018). Thus, for Petitioner to avail himself of a self-defense claim, he would have to establish that the victim, Tobiah Johnson, was armed, and that Petitioner reasonably believed he was in imminent fear of death or serious bodily injury. Petitioner never asserted this position at any time, nor did either of his co-defendants.[7] Petitioner provoked this incident by conspiring with two co-defendants to drive to Tobiah Johnson's apartment and to forcibly take a firearm from him that Petitioner believed was his. Simply stated, it is disingenuous and, in fact, erroneous for Petitioner to assert that his affirmative defense was somehow predicted on what Darsche Jackson saw or did not see. Only Petitioner had the "keys" to his self-defense claim, not Darsche Jackson or any other witness for that matter. In other words, it is Petitioner's belief at the time of the incident of whether he felt his life or someone else's was in imminent danger of death or serious bodily injury. Petitioner's subjective belief cannot be determined by what another person, such as Darsche Jackson, knew. If Petitioner did not believe that he was under imminent threat of death or serious bodily injury

---

[7] This Court also presided over Petitioner's co-defendant's cases. Both pled guilty, and neither one raised the possibility of a self-defense claim.

6

or that another person was, then Petitioner cannot assert a colorable self-defense claim. Accordingly, Petitioner would never be able to credibly assert that his sentence resulted from "the unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced" so to afford him collateral relief pursuant to the PCRA. 42 Pa.C.S.A. § 9543(a)(2)(vi). Further refuting Petitioner's claim was his knowing and voluntarily admission that he shot Tobiah Johnson with malice which will be discussed in further detail, *infra*.

Assuming, *arguendo*, that Petitioner's first theory of relief somehow survives legal scrutiny and is not meritless, Petitioner's claim that he should be permitted to withdraw his guilty plea because after discovered evidence establishes his innocence would nonetheless fail. In order for Petitioner to be eligible for post-conviction collateral relief based upon after discovered evidence, he must prove: "(1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict." *Commonwealth v. Johnson*, 179 A.3d 1105, 1123 (Pa. Super. 2018) (citing *Commonwealth v. Cox*, 636 Pa. 603, 614, 146 A.3d 221, 228 (2016)). As will now be discussed, Petitioner cannot meet his burden of proving the elements of this test.

Petitioner claims Darsche Jackson "recanted" her earlier statements to police and her testimony at his Preliminary Hearing, which constitutes after discovered evidence that he was justified in the killing of Tobiah Johnson. However, a review of Darsche Jackson's post-conviction statement, which is attached to the counseled Supplement to Motion For Post-Conviction Collateral Relief, evidences that that Darsche Jackson never recanted her testimony, nor does it contain any exculpatory statements regarding Petitioner's involvement in this murder.

7

Instead, the proffered statement, in fact, corroborates and is cumulative of Darsche Jackson's prior statements and of her testimony at Petitioner's Preliminary Hearing where she testified that she witnessed the confrontation, assault, and murder of Tobiah Johnson. Darsche Jackson consistently stated she saw an unknown male approach Tobiah Johnson from behind, punch him in the head, and knock him to the ground.[8] N.T., Preliminary Hearing, 12/16/14, at 15. While the unknown male continued to beat Tobiah Johnson, a vehicle backed into the parking lot where the assault was occurring, and Petitioner emerged. *Id.* at 12-13, 16. Petitioner began repeatedly striking the victim on the head with the butt of his gun. *Id.* at 16. Darsche Jackson then reported, "A couple of seconds go past as [Petitioner] is hitting him, then I heard a first shot." *Id.* at 17, 38-39 (relaying she heard a gunshot prior to Petitioner fatally shooting Tobiah Johnson). Darsche Jackson heard Petitioner react to the gunshot by exclaiming that Tobiah Johnson still had the gun on him, thus evidencing his knowledge of the fact. *Id.* at 18. On cross-examination, Petitioner's counsel even clarified that it Tobiah Johnson who fired the first shot. *Id.* at 39.

Clearly, Darsche Jackson did not recant her prior testimony. Nor do her post-conviction statements constitute "after discovered evidence." Petitioner always knew that Tobiah Johnson's weapon discharged first, not only because Darsche Jackson testified to it in Petitioner's presence and was cross-examined on the details by Petitioner's counsel, but also because Petitioner was physically present when that event occurred. In fact, Petitioner expressly demonstrated his awareness of that fact that Tobiah Johnson's gun discharged when he reacted to the gunshot by exclaiming to his cohort that Tobiah Johnson still had the gun on him. Thus, the content of Darsche Jackson's post-conviction statement was not discovered **after** Petitioner's conviction,

---

[8] This individual was later identified as Michael Barron.

and does not warrant post-conviction relief because it is evidence that was available to Petitioner prior to his guilty plea. *See Johnson, Cox, supra.*

Additionally, Darsche Jackson's post-conviction statement does not provide any basis for Petitioner to claim that the content therein would have compelled a different outcome than the one that resulted from his guilty plea. *See Johnson, Cox, supra.* As discussed *supra*, Petitioner was, at all times, aware that Tobiah Johnson's gun discharged prior to Petitioner shooting him in the back. Petitioner alone knew whether he reasonably believed that his life or someone else's was in imminent danger of death or serious bodily injury so to assert self-defense. Thus, Darsche Jackson's post conviction statement could not have provided him with the factual or legal predicate to argue that the homicide was justified, and, therefore, would not have resulted in a different outcome. *Johnson, Cox, supra.* Again, without being unnecessarily redundant, Petitioner's knowing and voluntary plea circumvents his current argument. Accordingly, Petitioner's claim is devoid of legal and factual merit, and does not warrant relief.

In sum, Petitioner has not met his burden of proving that he is entitled to collateral relief from his conviction because he cannot establish "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced" or the necessary elements of after discovered evidence. 42 Pa.C.S.A. §9543(a)(2)(vi); *see also Johnson, Cox, supra.* Consequently, this claim must fail.

Next, in his *pro se* Motion for Post Conviction Relief, Petitioner claims he is eligible for relief pursuant to 42 Pa.C.S.A. § 9543(a)(2)(ii) because his "[t]rial counsel misapplied the self-defense law which caused [Petitioner] to plead and accept a guilty plea." Motion for Post

9

Conviction Collateral Relief, 1/19/18 at 4.[9] However, in the subsequent, counseled Supplement

To Motion For Post Conviction Collateral Relief, this issue is not raised. Accordingly, the claim

is not preserved, and is waived. *Commonwealth v. Johnson*, 179 A.3d 1153, 1157 (Pa. Super.

2018) (counseled supplement to *pro se* PCRA petition that did not address the issues in the *pro

se* petition resulted in waiver of said claims). However, even if the claim that counsel's

ineffectiveness induced Petitioner to plead guilty was preserved, it is once again devoid of merit

and must, therefore, be dismissed.

In order for Petitioner to obtain post conviction relief on grounds that his counsel

rendered ineffective assistance, he is required to prove:

> the underlying claim is of arguable merit, counsel's performance lacked a
> reasonable basis, and counsel's ineffectiveness caused him prejudice.
> *Commonwealth v. Pierce*, 567 Pa. 186, 786 A.2d 203, 213 (2001); *see
> also Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).
> Prejudice in the context of ineffective assistance of counsel means
> demonstrating there is a reasonable probability that, but for counsel's
> error, the outcome of the proceeding would have been different.
> *Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326, 332 (1999). This
> standard is the same in the PCRA context as when ineffectiveness claims
> are raised on direct review. *Id.* Failure to establish any prong of the test
> will defeat an ineffectiveness claim. *Commonwealth v. Basemore*, 560 Pa.
> 258, 744 A.2d 717, 738 n. 23 (2000) (citing *Commonwealth v. Rollins*,
> 558 Pa. 532, 738 A.2d 435, 441 (1999) (ordinarily, post-conviction claim
> of ineffective assistance of counsel may be denied by showing petitioner's
> evidence fails to meet any one of three prongs for claim)).

*Com. v. Solano*, 634 Pa. 218, 230, 129 A.3d 1156, 1162–63 (2015) (citing *Commonwealth v.

Keaton*, 615 Pa. 675, 45 A.3d 1050, 1060 (2012)).

---

[9] Petitioner again argues against himself by advancing this claim. For trial counsel to be ineffective for "misapplying" the law of self-defense, trial counsel had to have knowledge of this factual predicate and erroneously advised Petitioner of the likelihood of prevailing at a trial by arguing justifiable homicide. This contention is in direct contradiction of Petitioner's first argument that he only learned that Tobiah Johnson's weapon discharged first after he was already convicted.

10

> Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. *See Ali, supra.* Where matters of strategy and tactics are concerned, "[a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.

*Com. v. Spotz*, 624 Pa. 4, 33–34, 84 A.3d 294, 311–12 (2014) (internal quotations and citations omitted).

Applying the law to the case *sub judice*, it is evident that Petitioner's claim that counsel was ineffective fails. Petitioner is under the misapprehension that he could have successfully argued that he shot Tobiah Johnson in self-defense had Attorney Capozzi effectively advised him of the law pertaining to the defense.

> In order for a defendant to successfully claim self-defense, he or she must meet the following three elements: (1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that the use of deadly force was necessary to prevent such harm; (2) the defendant did not provoke the incident which resulted in the victim's death; and (3) the defendant did not violate any duty to retreat. *Commonwealth v. Mouzon*, 617 Pa. 527, 53 A.3d 738, 740 (2012) (citations omitted). As previously noted, the Commonwealth has the burden of disproving self-defense beyond a reasonable doubt and may do so by disproving any one of the three self-defense elements the defendant must meet. *Id.* at 740–741.

*Commonwealth v. Patterson*, 180 A.3d 1217, 1231 (Pa. Super. 2018).

In the instant case, a self-defense claim was clearly unavailable to Petitioner. The facts demonstrate that after Tobiah Johnson stole Petitioner's firearm, Petitioner drove to Tobiah Johnson's apartment with two accessories and confronted him outside his apartment. *See* N.T., Preliminary Hearing, at 12-14. When Tobiah Johnson came outside, one of Petitioner's cohorts "punched him in his head, knocking him to the ground," at which point Petitioner got out of the vehicle and assaulted the victim. *Id.* at 16. Petitioner repeatedly bludgeoned Tobiah Johnson

11

with the butt of his gun. *Id.* 16-17, 39. After Tobiah Johnson's weapon discharged, Petitioner paused the assault long enough to comment that Tobiah Johnson still had a gun on his person, and then resumed the vicious beating. *Id.* at 18. When Tobiah Johnson attempted to get to his feet, Petitioner shot him in the back. *Id.* at 18, 41, 47. These facts establish that Petitioner provoked the deadly encounter and eviscerate any argument that he only used deadly force because he reasonably believed he or another person was in imminent danger of death or serious bodily injury.

Moreover, the record contradicts Petitioner's allegation that Attorney Capozzi "misapplied the self-defense law which caused [Petitioner] to plead and accept a guilty plea" or that Petitioner in any way misunderstood the law. Motion For Post Conviction Collateral Relief, 1/19/18 at 4. In "Defendant Trey Gunter's Sentencing Memorandum," Attorney Capozzi explicitly stated, "Mr. Gunter understands that by traveling to Darsche Jackson's apartment, with a firearm and confronting Mr. Johnson about his stolen property he provoked the confrontation and, thus, the defense of self-defense is unavailable to him." Defendant Trey Gunter's Sentencing Memorandum, 12/30/15 at 2-3, n. 1. In the same document, Attorney Capozzi cited to the relevant statute, which states that an individual is justified in using force upon another person "when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." *Id.* (citing 18 Pa.C.S.A. §505(a)). Furthermore, Attorney Capozzi cited to relevant case law stating that the Commonwealth may disprove a defendant's claim of self-defense by establishing that the defender provoked the incident. *Id.* (citing *Commonwealth v. Chine*, 40 A.3d 1239, 1243 (Pa. Super. 2012)). Therefore, Attorney Capozzi, a seasoned and experienced veteran of criminal practice, thoroughly explained the unavailability of a justification defense

12

(e.g., self-defense) to Petitioner. The stark reality of this case is the facts do not and never will support the defense of self-defense. Petitioner understood this and knowingly, intelligently and voluntarily admitted he shot Tobiah Johnson with malice and not in self-defense.

Lastly, upon review of the record, it is clear that Petitioner's plea of guilty was knowing and voluntary. At the plea hearing held on September 23, 2015, Assistant District Attorney Roger Bauer questioned Petitioner about whether Petitioner understood the plea agreement and Petitioner indicated he did understand the agreement and entered into it knowingly and voluntarily, as demonstrated by the following colloquy:

> **Mr. Bauer:** The plea agreement is at paragraph five. For the record the defendant will plead guilty to Count One, amending the charge of criminal homicide to murder of the third degree. The remaining charges will be nol [sic] prossed with the cost of prosecution upon the defendant, and for purposes of the Sentencing Guidelines the deadly weapons enhancement used will apply at Count One. Is that your understanding of the plea agreement in this case, sir?
>
> **Mr. Gunter:** Yes, sir.
>
> **Mr. Bauer:** Did you have a chance to review this form with your attorney?
>
> **Mr. Gunter:** Yes, sir.
>
> **Mr. Bauer:** Do you have any questions on the rights that you have and the rights you give up, the maximum penalty or the plea agreement?
>
> **Mr. Gunter:** No, sir.
>
> **Mr. Bauer:** I see above the line "defendant" a signature, is that yours?
>
> **Mr. Gunter:** Yes.
>
> **Mr. Bauer:** Did you sign this form today because you understand everything within this document?
>
> **Mr. Gunter:** Yes, sir.

N.T., Guilty Plea, 9/23/15 at 9-10. Attorney Bauer then explained the charge against Petitioner, which had been amended from first-degree murder to third-degree murder. After Attorney Bauer

13

gave a thorough explanation of the amended charge, Petitioner explicitly stated he was pleading

guilty, as demonstrated by the following colloquy:

> **Mr. Bauer**: Mr. Gunter, I have to advise you of the legal and factual basis for your plea. The Commonwealth alleges that on or about November 17, 2014, that you, Trey Darrin Gunter, did directly or by virtue of your complicity, intentionally, knowingly, or recklessly, and with malice, at 123 Water Street in a parking lot behind apartment number 27-E in the borough of Edinboro, Erie County, cause the death of another human being, specifically Tobiah Johnson, in that you, Trey Darrin Gunter, did shoot the victim, Tobiah Johnson, resulting in his death, thereby committing the crime of murder in the third degree.
>
> Malice under the law is defined as wickedness of disposition, hardness of heart, cruelty, a recklessness of the consequences, and an extreme indifference to the value of human life.
>
> Do you understand the legal and factual basis for Count One as amended to murder in the third degree?
>
> **Mr. Gunter**: Yes, sir.
>
> **Mr. Bauer**: How do you plead to Count One?
>
> **Mr. Gunter**: Guilty.

*Id.* at 11-12.

Additionally, the Court thoroughly questioned Petitioner about whether he understood the

plea agreement. Again, Petitioner indicated he fully understood the agreement and entered into it

knowingly and voluntarily, as demonstrated by the following colloquy:

> **The Court**: …Looking at the now amended charge at Count One, Mr. Gunter, you had indicated your plea of guilty and I want to ask you now, is that what you, in fact, did on that date in question as read in this Court?
>
> **Mr. Gunter**: Yes, sir.
>
> **The Court**: Has anyone in any way promised you something or coerced you in any way to tell me something that wasn't true?
>
> **Mr. Gunter**: No, sir.
>
> **The Court**: Have there been any promises made to you outside of what has been identified here in this courtroom?

14

**Mr. Gunter:** No, sir.

**The Court:** I'm satisfied there's a legal and factual basis to support Count One. I'm also satisfied that his plea of guilty was knowingly and voluntarily entered.

Let me also ask you, with respect to the first sheet, the Understanding of Rights Prior to the Guilty Plea, Mr. Gunter, again, did you have enough opportunity to discuss this matter with your attorney, Attorney Capozzi?

**Mr. Gunter:** Yes, sir.

**The Court:** Were you completely satisfied with his representation?

**Mr. Gunter:** Yes, sir.

**The Court:** And outside of the agreement as set forth in paragraph five, has anyone made any other promises not written in that paragraph?

**Mr. Gunter:** No, sir.

**The Court:** Do you fully understand the maximum penalty and terms of incarceration as the worst case scenario? In other words that is what the maximum represents for this plea; do you fully understand that?

**Mr. Gunter:** Yes, sir.

**The Court:** Did you have any questions about that?

**Mr. Gunter:** No, sir.

**The Court:** And again, by signing your name above the word "defendant," does that mean that on this guilty plea and understanding of rights sheet, these rights were read to you, that you understand them, and acknowledged that by signing this plea sheet?

**Mr. Gunter:** Yes, sir.

*Id.* 13-15. All of these excerpts from Petitioner's plea hearing unequivocally demonstrate that Petitioner's plea of guilty was knowing and voluntary. Petitioner's responses indicate he signed the guilty plea, was under no coercion to enter a plea of guilty, fully understood his rights under the agreement, and had the opportunity to thoroughly discuss the matter with Attorney Capozzi.

15

Further, he also stated, under oath, that he was satisfied with Attorney Capozzi's representation, and again, there was no mention of self-defense. *Id.*

It is abundantly clear that Petitioner has failed to meet his burden of proving that Attorney Capozzi was ineffective for "misapplying" the law of self-defense. There was no factual or legal predicate upon which to assert that Petitioner was justified in killing Tobiah Johnson. Counsel cannot be ineffective for failing to pursue a meritless claim. *Com. v. Solano*, 634 Pa. 218, 230, 129 A.3d 1156, 1162–63 (2015). Accordingly, Petitioner was not denied the effective assistance of counsel, and is not entitled to relief pursuant to the Post Conviction Relief Act.

**Conclusion**

For all of the above reasons, Petitioner's PCRA request for collateral relief is denied.

Petitioner is hereby advised by this Notice that the Court intends to dismiss his Motion For Post Conviction Collateral Relief filed on January 19, 2018 and supplemented on May 14, 2018, without a hearing. Petitioner shall have twenty days from the date of this Notice to file and serve objections, if any, to this Notice.

BY THE COURT:

Hon. John J. Trucilla, President Judge

cc:     Office of the District Attorney
        William J. Hathaway, 1903 West 18th Street, PMB #261, Erie, PA 16505
        Trey Gunter, #MK2789, SCI – Somerset, 1600 Walters Mill Rd., Somerset, PA 15510

16