J-S38024-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TERRELL LAMONT CHILDS | : | |
| | : | |
| Appellant | : | No. 303 WDA 2021 |

Appeal from the PCRA Order Entered February 16, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0000620-2008

BEFORE:   BENDER, P.J.E., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED: MARCH 8, 2022**

Appellant, Terrell Lamont Childs, appeals from the February 16, 2021 order dismissing his second petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46, as meritless.  After careful review, we affirm.

The relevant facts and procedural history are as follows.  On April 19, 2007, at approximately 8:30 AM, a man, later identified as Appellant, shot Jibreel Scott in downtown Pittsburgh.[1]  Shortly before the shooting, Appellant exited a stolen blue Subaru, wearing a hoody, a long black trench coat, gloves, a dark dreadlocks wig, and a false beard.  Appellant initially came upon Kevin Alton, who Appellant misidentified as his intended victim, Mr. Scott.  Appellant

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] One week earlier, Mr. Scott's brother, Obatyah Scott, had shot and killed Appellant's brother.

seized Mr. Alton by the front of his coat, pointed a gun in his face, but then, after looking at Mr. Alton for a few seconds, released him. Minutes later, and just a few feet away, Appellant encountered Mr. Scott and shot him approximately five times. Mr. Scott died from his injuries one week later.

While investigating the shooting, police recovered a fake beard, two dreadlocks wigs, a right-handed black glove, and a black trench coat. DNA samples from the glove and one of the wigs matched Appellant's DNA. Police also recovered the stolen blue Subaru. Inside the vehicle, police found a rust brown-colored propylene fiber consistent with the propylene fiber from the beard, and a brown-colored wool fiber consistent with fibers from one of the dreadlocks wigs.

Following their investigation, police arrested Appellant and charged him with First-Degree Murder, Third-Degree Murder, and Carrying a Firearm Without a License. At trial, the Commonwealth presented testimony from numerous eye witnesses and expert witnesses who established the above facts.

Appellant proceeded to a jury trial following which the jury convicted Appellant of the crimes charged. On August 6, 2009, the trial court imposed an aggregate sentence of life plus three to six years' imprisonment. Appellant filed a timely direct appeal, and this court affirmed his judgment of sentence on March 9, 2012. **See Commonwealth v. Childs**, 47 A.3d 1239 (Pa. Super. 2012) (unpublished memorandum). On August 21, 2012, the Pennsylvania Supreme Court denied Appellant's Petition for Allowance of Appeal. **See**

*Commonwealth v. Childs*, 50 A.3d 124 (Pa. 2012).  Appellant did not seek further review of his judgment of sentence.

Appellant filed a first PCRA Petition in November 2013, which failed to garner relief.

On November 2, 2017, Appellant filed the instant PCRA Petition, his second, alleging that he had discovered new, exculpatory evidence.  The PCRA court appointed counsel who, on June 29, 2018, filed an Amended Petition reiterating Appellant's newly-discovered evidence claim and identifying Damian Benjamin as a witness who would provide exculpatory evidence. Appellant asserted that, although his Petition was facially untimely, the PCRA court had jurisdiction over it pursuant to the new facts exception to the PCRA's one-year time-bar.  *See* 42 Pa.C.S. § 9545(b)(1)(ii).  Appellant further asserted that on September 9, 2017, Appellant's brother, Jermaine Childs, sent a letter signed by Mr. Benjamin to Appellant in which Mr. Benjamin stated that he saw two men other than Appellant in a blue Subaru shortly before the shooting.  Appellant averred that the information provided by Mr. Benjamin was unknown to Appellant and his counsel before and during trial.

The PCRA court concluded that Appellant had satisfied the exception to the PCRA's time-bar and, on April 22, 2019, it held a hearing on Appellant's Petition.

Mr. Benjamin testified at the hearing that he knew both Appellant and the victim and did not witness the shooting.  He testified that, on the morning of the shooting, around 7:00 or 7:30 AM he was in the Hill District

neighborhood of Pittsburgh. He testified that he saw a blue Subaru drive by around 7:30 AM and stop. He walked past the car and saw Gary "Geno" Adams standing outside the driver's seat and a man he knew as "Dread" sitting in the passenger seat. He testified that Mr. Adams and Dread were dressed in black, that Mr. Adams was wearing a hoodie, and that Dread was alleged to have dreadlocks. Appellant was not in the vehicle. He testified that he learned from the news that someone had been shot outside a halfway house in downtown Pittsburgh and later learned the identity of the victim from another person, Chris Green. He testified that Mr. Green insinuated that Mr. Adams had been the shooter. Mr. Benjamin admitted that he never spoke with the police about the homicide and that, since the incident, he has been in and out of prison. He testified that he had heard rumors about the homicide and believed that Appellant had been wrongly convicted. He admitted that he has two prior burglary convictions. Mr. Benjamin also testified that the first time he came forward to report what he knew was on September 9, 2017 when he wrote a letter to his sister's baby's father asking him to let Appellant know that he had information for him.

On February 2, 2021, the PCRA court notified Appellant of its intent to dismiss his petition pursuant to Pa.R.Crim.P. 907 concluding that Mr. Benjamin's testimony was not credible and would not have changed the outcome of Appellant's trial. Rule 907 Notice, 2/2/21, at 4.

Appellant filed objections to the PCRA court's Rule 907 notice in which he disagreed with the court's characterization of Mr. Benjamin as not credible

and took issue with the court's "focus" on Mr. Benjamin's failure to contact the police at the time of the incident and its conclusion that his testimony was not exculpatory. Nevertheless, on February 16, 2021, the PCRA court dismissed Appellant's petition for the reasons set forth in its Rule 907 Notice.

This timely appeal followed.

Appellant raises the following issues on appeal:

I. The PCRA [c]ourt erred in denying relief where [Appellant] established his after-discovered evidence claim through [Mr.] Benjamin's exculpatory eyewitness testimony.

II. The PCRA [c]ourt erred in denying relief because [Mr.] Benjamin's testimony is likely to compel a different verdict at a new trial.

Appellant's Brief at 5.

We review the denial of a PCRA Petition to determine whether the record supports the PCRA court's findings and whether its order is otherwise free of legal error. **Commonwealth v. Fears**, 86 A.3d 795, 803 (Pa. 2014). This Court grants great deference to the findings of the PCRA court if they are supported by the record. **Commonwealth v. Boyd**, 923 A.2d 513, 515 (Pa. Super. 2007). "Further, the PCRA court's credibility determinations are binding on this Court, where there is record support for those determinations." **Commonwealth v. Anderson**, 995 A.2d 1184, 1189 (Pa. Super. 2010). We give no such deference, however, to the court's legal conclusions. **Commonwealth v. Urwin**, 219 A.3d 167, 170 (Pa. Super. 2019)

To be eligible for relief pursuant to the PCRA, Appellant must establish, *inter alia*, that his conviction or sentence resulted from one or more of the

enumerated errors or defects found in 42 Pa.C.S. § 9543(a)(2).[2] Appellant must also establish that the issues raised in the PCRA petition have not been previously litigated or waived. *Id.* at § 9543(a)(3).

Relevant here, the PCRA provides relief for a petitioner who demonstrates his conviction or sentence resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." *Id.* at § 9543(a)(2)(vi). To establish a claim of after-discovered evidence, a petitioner must prove that: "(1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict." *Commonwealth v. Sepulveda*, 144 A.3d 1270, 1276 n.14 (Pa. 2016) (citation omitted). The four-part test is conjunctive and if one prong is not satisfied, there is no need to analyze the remaining prongs. *Commonwealth v. Pagan*, 950 A.2d 270, 293 (Pa. 2008). Moreover, "the proposed new evidence must be producible and admissible."

---

[2] Neither the PCRA court nor the Commonwealth dispute that the claims in Appellant's PCRA Petition meet the newly-discovered facts exception to the PCRA time-bar. *See* 42 Pa.C.S. § 9545(b)(1)(ii). Upon review, Appellant pleaded and proved "1) the facts upon which the claim was predicated were unknown and 2) could not have been ascertained by the exercise of due diligence" as required to overcome the time-bar. *Commonwealth v. Bennett*, 930 A.2d 1264, 1272 (Pa. 2007) (citation, quotation marks, and emphasis omitted). Accordingly, we have jurisdiction to review the merits of Appellant's claims. *See id.*

*Commonwealth v. Castro*, 93 A.3d 818, 825 (Pa. 2014) (citation and quotation marks omitted).

Notably, when evaluating the fourth prong, our Supreme Court has instructed, "the question is whether the nature and quality of the evidence is such that there is a reasonable probability that the jury would have credited it and rendered a more favorable verdict." *Commonwealth v. Johnson*, 966 A.2d 523, 542 (Pa. 2009). The PCRA court's assessment "must include a recognition of the impeachability of the witnesses, and not merely a viewing of their testimony in a most favorable light." *Id.* Some witnesses may be subject to strong impeachment or display a demeanor that convinces the court that no reasonable jury would believe them. *Id.* "On the other hand, some witnesses may conduct themselves, or be of such repute, that the PCRA judge has substantial confidence that a jury would credit them." *Id.*

In his interrelated issues, Appellant avers that the PCRA court erred in denying his request for a new trial based on after-discovered exculpatory evidence because, if it had been offered at trial, Mr. Benjamin's testimony would have compelled a different verdict. Appellant's Brief at 17-26. He asserts that the PCRA court improperly "usurped the province of the jury" when it determined that Mr. Benjamin's testimony was not credible. *Id.* at 21. Appellant also avers that Mr. Benjamin's testimony establishes that Mr. Adams—a man Appellant concedes police eliminated as a suspect based on his height, weight, skin tone, and lack of a DNA match from the scene of the shooting—was the shooter. *Id.* at 23-25. He concludes that Mr. Benjamin's

testimony about Mr. Adams's whereabouts on the morning of the shooting would have compelled a different result. *Id.* at 25.

The PCRA court disagreed with Appellant's assertions. In explaining its reasons for dismissing Appellant's petition, the court opined as follows:

> [Mr.] Benjamin's testimony lacks credibility and is not outcome determinative. Through his own admission, [Mr.] Benjamin possessed the information since the day of the incident, yet failed to provide[] authorities with the information, or take any action for that matter, for over a decade. Furthermore, he has two prior *crimen falsi* convictions for burglary which also weighs heavily against his credibility.
>
> Even if believed, [Mr.] Benjamin's testimony merely established that he saw two other individuals in a blue Subaru an hour before the shooting. As such, his testimony is not exculpatory to [Appellant] for the time of the shooting. Further, [Mr.] Benjamin's testimony alluding that Geno Adams was the perpetrator is misguided as law enforcement, during the course of their investigation, specifically excluded that individual based upon his height, weight, skin tone, and lack of DNA.
>
> What is credible but detrimental to [Appellant's] claim is that his DNA was found on the wig and beard recovered during the investigation, and he could not provide law enforcement with a plausible explanation for such. Additionally, [Appellant] had motive and matched the physical description given at trial of the shooter. Further, recorded jail calls evidence [Appellant] and his family attempted to pay off witness Kevin Alton. As such, [Appellant's] claims of innocence are belied by the record and his PCRA claim is without merit.

Rule 907 Notice at 4-5 (some paragraph breaks added).

Contrary to Appellant's argument that the PCRA court usurped the role of the jury in determining that Mr. Benjamin's testimony was not credible, it is the PCRA court's responsibility to determine witness credibility. "Indeed, one of the primary reasons PCRA hearings are held in the first place is so that

credibility determinations can be made; otherwise, issues of material fact could be decided on pleadings and affidavits alone." **Johnson**, 966 A.2d at 539. Here, the PCRA court found that Mr. Benjamin's testimony was not credible. We decline to usurp the PCRA court's credibility determinations or reweigh the evidence.

Moreover, the record supports the PCRA court's findings that the testimony offered by Mr. Benjamin was not exculpatory when considered in the context of the record as a whole and we discern no legal error in its Order. Accordingly, there is not a reasonable probability that a jury would have credited it and rendered a more favorable verdict. Appellant, thus, fails to meet the fourth prong of the after-discovered evidence test. Accordingly, we conclude the PCRA court properly exercised its discretion in denying relief.

Order affirmed

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/8/2022